JAMES N. LARNED *vs.* ALBERT H. WHEELER & another.

Worcester.   Sept. 29, 1885. — Jan. 5, 1886.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

An action will lie against the selectmen of a town by a person whose name is wrongfully erased from the register of voters, required to be kept by the Pub. Sts. *c.* 6, § 13.

A declaration alleged that an election was to be held on November 6, 1883; that the plaintiff's name was on the register of voters, and the plaintiff had the right to vote at such election ; that on November 3, 1883, the selectmen of the town, although they had sufficient evidence furnished them of the plaintiff's qualifications as a voter, wrongfully removed his name from the register and the lists of voters, and wrongfully refused the ballot tendered by the plaintiff at the election. *Held,* that the declaration set forth a good cause of action for the erasure of the plaintiff's name from the register of voters.

TORT against two of the three persons constituting the board of selectmen of the town of Southbridge for the year 1883.  The declaration alleged, that for three years prior to November 6, 1883, the plaintiff had resided continuously in the town of South-bridge, and had not changed his residence ; that he was entitled to vote at the election for state, county, and other officers, held on said day ; that, on November 1, 1883, his name was on the register of voters, and upon the lists of voters ; that the plaintiff appeared before the defendants, as selectmen of Southbridge, at a meeting of the board of selectmen, held on November 3, 1883, and furnished it with evidence of his qualifications as a voter, and requested that his name should not be erased from said register and lists of voters, and also appeared at the polls at said election, and, offering his ballot, demanded the right and privilege of voting ; and that the defendants knowingly and wrongfully caused his name to be erased from said register and lists of voters, and wrongfully refused the ballot so tendered by the plaintiff, and deprived him of the right and privilege of voting.  The answer contained a general denial, and averred that the name of the plaintiff was not borne upon any list

returned to the defendants by the collector of taxes for said town as of a person who had paid to him any state or county tax since the last preceding return of said collector. Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence of his qualifications as a voter at the time set out in his declaration, and to show that the defendants were members of the board of selectmen of Southbridge at the time alleged. He also offered evidence, which was not controverted, that on November 1, 1883, his name was recorded upon the record of persons entitled to vote in said town, known as the register of voters, kept by the selectmen, as required by law, and that he had voted at previous elections in said town, and that he had a legal right to do so by reason of residence and taxation; that prior to November 3, 1883, he received from one of these defendants notice to appear before the board to show cause why his name should not be erased from said register; that he appeared before the board, before the close of registration, at a meeting of the board for revising and correcting the lists of voters, and answered such questions as were put to him by the board, and made such statements as he chose to make to them.

The evidence was conflicting as to what took place before the board, and as to the time of the meeting.

The plaintiff's evidence tended to show that he went before the board on Friday evening, about eight o'clock, and Wheeler asked him if his wife had gone to Binghamton, N. Y.; to which he replied, that she had gone there temporarily, and might be back at any time, and might not be back at all; that she had taken such household goods as she wanted, and he had sold the rest; that he had been to the tax collector to pay his tax, and he could not find that any had been assessed to him; that he had paid a tax the year before, and had his tax bill with him; that his wife was living in a house belonging to him; that he did not intend to go there himself to live, but intended to stay in Southbridge; and that his business was there, and he intended to continue to make it his home there.

The defendants offered evidence tending to show that the plaintiff appeared before the board on the Saturday afternoon before election, and, in answer to questions put him and otherwise,

stated that he had moved his family to Binghamton, N. Y., in April, 1883; that they were to remain there permanently; that there had been no separation or divorce; that he had sent part of his household goods, and had sold the rest; that he was not assessed in Southbridge that year, but had been the year before; and that he claimed a home with his wife, but that he claimed the right to vote in Southbridge. At the close of this interview the plaintiff was informed that the matter under consideration would be determined later.

It was also in evidence, that at a later hour, and before ten o'clock in the afternoon of the Saturday preceding the election, representations were made, by a person other than the plaintiff, as to the law of domicil applicable to the plaintiff's case and in the interest of the plaintiff's right to registration, and thereupon, a vote being had by the board, the defendants voted that he had lost his domicil in Southbridge, and the third member of the board, stating that he was not willing to deprive the plaintiff of the right to vote, voted that he had not; and that the third member of the board, acting as clerk, having kept on a separate paper a list of the corrections to be made upon the register by the action of the board in accordance with said vote, afterwards, and without further consultation with, and without the actual knowledge of, the defendants, and before election day, erased the plaintiff's name from the register of voters, and also from the check list to be used at the election then next to be had.

The plaintiff offered evidence tending to show that on election day he went to the polling place to vote, and selected his ballot; that he found the defendant Wheeler with the voting list, who said to him, "Your name is stricken off the list," and in reply to his inquiry, "Why?" said to him, "Because your wife went away, and you have not been assessed this year;" that he demanded his right to vote, and Wheeler said to him, "You cannot vote;" that he declared to him that he had complied with all the requirements of law, and had a right to vote; that he did not know which one of the three selectmen had charge of the ballot box and was receiving ballots, and that he did not offer his ballot to any one at the ballot box.

The defendants offered evidence tending to show that on election day the defendants did not have charge of the check list;

that Paige, the third member of the board, had charge of the ballot box, and the defendant Wheeler was acting as moderator of the meeting; that the ballot box was upon a table, upon a platform, and that voters passed up on to the platform to the check list, and, their names being found and checked, passed on to the ballot box and deposited their ballots; that the plaintiff did not go on to the platform or by the check list, or offer his ballot to any of the board, or attempt to do either; that standing upon the floor of the hall he was informed by Wheeler, who looked at the register of voters, and said that his name was not upon the check list, and in answer to the question, " Why? " was informed by Wheeler that it was because he had stated to the selectmen that he claimed a home with his wife; that he thereupon said he had as good a right to vote as Wheeler had, and, after a suggestion by a bystander to demand the right to vote, he said, " I do demand the right; " that the plaintiff addressed Wheeler only, and neither of the other selectmen was appealed to or took any part in the conversation.

It was conceded at the trial that the plaintiff was domiciled in Southbridge in the year 1882, and was at that time a legal voter; and that the only ground upon which it was contended by the defendants that he had lost his right to vote in that town in 1883 was by a change in his domicil from Southbridge to Binghamton.

The defendants asked the judge to instruct the jury as follows : " 1. The action cannot be maintained against either of the defendants, unless the plaintiff actually tendered his ballot, and it was refused by the defendants. 2. It cannot be maintained against both of the defendants, unless he actually tendered it to both of them, and they refused to receive it. 3. It cannot be maintained on the ground that the defendants erased his name from the list. 4. It cannot be maintained against either of the defendants, unless he offered them proof of his qualifications, before the close of registration, that was reasonably sufficient to satisfy men of fair and impartial minds, and that ought to have induced them in this particular case to put his name upon the register for the election in November then next ensuing. 5. It cannot be maintained, unless the evidence of his qualifications was reasonably satisfactory, and not such as

leaves the question in doubt. 6. A mere declaration that he claimed the right to vote, unaccompanied with an actual tender of his ballot, is not sufficient in law to constitute a tender of his vote that will support this action. 7. The action cannot be maintained against either of the defendants unless they had omitted his name from the voting lists after it had been returned to them by the collector of the town of Southbridge as that of a person who had paid a tax since the last return of the collector."

The judge refused to instruct the jury in the language of the foregoing requests, but instructed them as follows: "The only cause of action set forth in the plaintiff's declaration upon which he can recover, if he can recover at all, is for erasing his name from the register of voters, and not for refusing his vote at the polls on the day of the election. The action can be maintained if, upon all the evidence in the case, the jury are satisfied that the plaintiff appeared at a meeting of the selectmen, held for receiving evidence of the qualifications of voters and correcting the lists of voters, and furnished them with satisfactory evidence of his qualifications as a voter. The jury must find that the evidence furnished by the plaintiff to the selectmen was sufficient to show that he had not changed his domicil, and that the defendants caused his name to be erased from the register of voters. It will not be sufficient to enable the plaintiff to maintain his action, to produce such evidence to the jury upon this trial, without also showing that he furnished the same to the selectmen at the time and place before stated, when the selectmen met to revise and correct the list of voters. The plaintiff can have but one domicil at the same time, and his domicil in Southbridge will continue until he acquires or gains one elsewhere. To effect a change of domicil, the intent to change must be accompanied with an act of change, and the jury are to say whether there is evidence in the case to show a change of domicil. The defendants are liable, if the plaintiff furnished them sufficient proof of his qualifications as a voter, as aforesaid, without proving that they wilfully and maliciously caused his name to be erased."

The jury returned a verdict for the plaintiff, in the sum of $400; and the defendants alleged exceptions.

*J. Hopkins,* (*J. M. Cochran* with him,) for the defendants.

*F. P. Goulding & A. J. Bartholomew,* for the plaintiff.

DEVENS, J. It is the contention of the defendants, that no action can be maintained against them for erasing the plaintiff's name from the register of voters, he having appeared before them at a meeting held for receiving evidence of the qualifications of voters, and furnished them with satisfactory evidence of such qualifications.

The law makes provision for a register of voters, and also for alphabetical lists. The latter are used at an election, and contain simply the names and residences of voters, while the former embraces a larger number of particulars. Pub. Sts. *c.* 6, §§ 16, 18, 20. The provision that "selectmen of towns shall make and keep records of all persons entitled to vote therein at any election for town, county, state, or national officers, which shall be known as a register of voters," contemplates a permanent record, to be revised from time to time, as before any annual election, or upon affidavit that persons named are illegally registered. Pub. Sts. *c.* 6, §§ 13, 15, 22. As it exists, it determines the right of persons to vote, as from it the alphabetical lists of voters are made. While the selectmen are to meet on the Saturday before the meeting for the choice of town, county, or state officers, to receive evidence of the qualifications of persons claiming a right to vote, and to correct the lists of voters, the first step in the latter duty is to correct the registration, which ceases at ten o'clock in the afternoon of that day. § 23. As no person can be added to the lists of voters until his name has been recorded in the register, according to the express words of the statute, so it would seem clear that it cannot be thence erased until it has been struck from the register. § 27.

The argument is not sound, that there must be a new register at each election, and that, as it is so prepared for each, it cannot be said that any name is erased therefrom merely because it is not there found at ten o'clock on the Saturday afternoon previous to an election, when registration ceases, even if it had been on previous registers. While the register is subject to various modifications, such as those heretofore alluded to, it does not lose its substantial identity. The provision by which at any time, except that it must not be within seven days of

an election, a legal voter may apply to the proper authorities, setting forth that a person named is illegally registered, sufficiently shows that the register is treated as always existing.

The rights of the voter in approaching the polls are indeed dependent upon the voting list, and the words "and no person shall vote at an election whose name has not been previously placed on such list," refer to the alphabetical list furnished to the officers conducting the election. Pub. Sts. *c.* 7, § 9. But the voting list depends on the registration which has been theretofore made. When, therefore, the defendants struck the plaintiff's name from the register, they effectually deprived him of his right to vote at any subsequent election until it was restored thereto. It was the duty of those conducting the election to refuse his vote. The erasure of his name was the injury which he sustained, and, if this was wrongful, he might maintain an action therefor, if at a meeting held for the purpose of registration he had appeared before the selectmen and furnished them with proper and sufficient evidence of his qualifications. *Lombard* v. *Oliver*, 3 Allen, 1, and 7 Allen, 155. *Harris* v. *Whitcomb*, 4 Gray, 433.

The fact, that, if he had formally tendered his vote, which had been refused, he might also have maintained an action for such refusal by reason of having furnished to the selectmen sufficient evidence of his qualifications as a voter before the close of registration, and requested that his name be put upon the list, should not deprive him of his remedy for the injury done him by the removal of his name from the register. Pub. Sts. *c.* 7, § 10. *Blanchard* v. *Stearns*, 5 Met. 298, 301. Whether he appeared before the selectmen before the close of registration for the purpose of having his name put on the register, or, it being there, to prevent it being taken off, cannot be important. The removal of his name was, if wrongful, a direct injury, which deprived him of his right to vote. For this an action may be maintained, although there are also highly penal provisions in the statute, intended to provide for wilful violations of the rights of a voter, under which the plaintiff does not seek to recover.

It was not material whether the plaintiff actually tendered his ballot, as it could not have been received, his name not being upon the list, nor whether the tax collector had or had not

returned the plaintiff's name as having paid his tax, the injury done the plaintiff not being an omission or neglect of the defendants to register his name, but an erasure by them of the name. Pub. Sts. *c.* 6, § 29.

The defendants urge that the declaration does not set forth a cause of action, because it does not show that the erasure was made from the register prepared for the election of November 6, 1883. The declaration was, that an election was to be held on November 6, 1883; that the plaintiff's name had been, and was, on November 1, on the register of voters; that he had a right to vote at such election; that on November 3, although the defendants had sufficient evidence furnished them of his qualifications, they wrongfully removed his name from the list, by which he lost the privilege of voting. This sets forth a good cause of action, and although it also adds that the defendants wrongfully refused to receive his ballot, on which part of his declaration he was not entitled to rely, as the ballot had not been properly tendered, this could not affect the other cause of action, which was well set forth. *Exceptions overruled.*