PATRICK KINNEEN vs. JAMES H. WELLS & others.

Middlesex.    March 2. — May 11, 1887.    GARDNER, J., absent.

Section 7 of the St. of 1885, c. 345, providing that "no person hereafter naturalized in any court shall be entitled to be registered as a voter within thirty days of such naturalization," is in conflict with the Constitution of the Commonwealth, and is void.

DEVENS, J.   The case at bar is an action of tort against the registrars of voters in the city of Cambridge to recover damages for wrongfully refusing, as the plaintiff alleges, to register him as a voter for the state election of 1886.   The judge who presided at the trial in the Superior Court sustained the demurrer to the plaintiff's declaration, and reported the case for the determination of this court.

. The case raises but a single question, although one of much importance.   The defendants refused to register the plaintiff because he had been naturalized within thirty days previously to his application for registration.   They were fully justified in so doing, under the St. of 1885, c. 345, § 7, if the provisions of this section are constitutional.   This section enacts that "no person hereafter naturalized in any court shall be entitled to be registered as a voter within thirty days of such naturalization."

By naturalization, the plaintiff became eo instanti a citizen of the United States, and therefore a citizen of the State of his residence.   By the fourteenth article of the Amendments of the Constitution of the United States, " All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

The right or privilege of voting is a right or privilege arising under the Constitution of each State, and not under the Constitution of the United States.   The voter is entitled to vote in the election of officers of the United States by reason of the fact that he is a voter in the State in which he resides.   He exercises this right because he is entitled to by the laws of the State

where he offers to exercise it, and not because he is a citizen of the United States. *United States* v. *Anthony*, 11 Blatchf. 200. What are the rights of citizens of the United States as such, and not as citizens of particular States, need not be here considered. They have repeatedly been discussed and defined. *Corfield* v. *Coryell*, 4 Wash. C. C. 371. *Paul* v. *Virginia*, 8 Wall. 168. *Ward* v. *Maryland*, 12 Wall. 418, 430. *Slaughter-House cases*, 16 Wall. 36.

The qualifications of voters are fixed by state legislation. The requisitions as to ownership of property, citizenship, sex, and residence, in connection with the right of voting, vary with the constitutions or laws of the several States. However unwise, unjust, or even tyrannical its regulations may be or seem to be in this regard, the right of each State to define the qualifications of its voters is complete and perfect, except so far as it is controlled by the fifteenth article of the Amendments of the Constitution of the United States, which provides that "the right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State, on account of race, color, or previous condition of servitude."

The question whether § 7 of the St. of 1885, *c.* 345, is constitutional, must be decided by determining whether this legislation is in conformity with the Constitution of this Commonwealth, or whether it adds anything to the qualifications which the voter is thereby required to possess, and thus interferes with the enjoyment of the rights with which this Constitution invests him.

The third article of the Amendments of the Constitution of Massachusetts, adopted in 1821, is as follows : " Every male citizen of twenty-one years of age and upwards, excepting paupers and persons under guardianship, who shall have resided within the Commonwealth one year, and within the town or district, in which he may claim a right to vote, six calendar months next preceding any election of governor, lieutenant-governor, senators, or representatives, and who shall have paid, by himself, or his parent, master, or guardian, any state or county tax, which shall, within two years next preceding such election, have been assessed upon him, in any town or district of this Commonwealth ; and also, every citizen who shall be, by law, exempted from taxation, and who shall be, in all other respects,

qualified as above mentioned, shall have a right to vote in such election of governor, lieutenant-governor, senators and representatives; and no other person shall be entitled to vote in such elections."

A reading and writing qualification was established in 1857, by article 20 of the Amendments of the Constitution. But this it will not be necessary to consider in the present discussion.

The qualifications of voters are thus defined with clearness and precision; without the possession of these, the citizen or inhabitant cannot exercise the privilege of voting, and, as whoever possesses them is by the Constitution entitled to this privilege, legislation cannot deprive him of it. By the Constitution, *c.* 1, § 1, art. 4, full power and authority are given to the General Court " from time to time to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same, and for the necessary support and defence of the government thereof." To the provisions of the Constitution all legislation is thus made subordinate, and it cannot add to nor diminish the qualifications of a voter which that instrument has prescribed. *Blanchard* v. *Stearns,* 5 Met. 298, 301. *Williams* v. *Whiting,* 11 Mass. 424, 433. " This provision of the Constitution [article 3 of the Amendments], being irrepealable by any act of ordinary legislation, must be obeyed and carried into effect according to its plain intent and meaning, as far as that can be ascertained." *Opinion of Justices,* 5 Met. 591, 592.

The plaintiff, according to the allegations of his declaration, possessed, when he offered himself for registration, all the qualifications of a voter required by the Constitution. Any legislation by which the exercise of his rights is postponed diminishes them, and must be unconstitutional, unless it can be defended on the ground that it is reasonable and necessary, in order that the rights of the proposed voter may be ascertained and proved, and thus the rights of others (which are to be protected as well as his own) guarded against the danger of illegal voting. The

Constitution, while providing for the qualifications of voters, contemplates that equal and reasonable rules will be made by legislation as to the method of exercising the privilege, and also that, somewhere and at some time, under proper regulations, there will be an inquiry whether those offering to vote possess the requisite qualifications. This inquiry involves an investigation of various facts, as those in regard to the proposed voter's age, sex, residence, payment of taxes, &c. It is not an unreasonable provision that all persons entitled as voters shall be registered as such previously to depositing their ballots, and, if the Legislature deems that such an inquiry could not proceed concurrently with the actual voting or election, and both be conducted in a deliberate and orderly manner, it is not unreasonable that it should provide that such an inquiry should terminate before the election actually commences, at a previous time sufficiently long to make proper preparation therefor.

The plaintiff in the case at bar does not contend that the Legislature has not the right to make any reasonable, uniform, and impartial regulation of the mode of exercising the right of suffrage, and also of ascertaining the qualifications of voters. He denies that section 7 of the statute under discussion is of this character.

The leading case, not only in this Commonwealth, but in the whole discussion that has taken place in this country in regard to the right of legislatures to provide for judging the qualifications of voters, and for regulating the exercise of their privileges by them as these are prescribed by the constitutions of the States, respectively, is *Capen* v. *Foster*, 12 Pick. 485. It was there held that the Sts. of 1821, c. 110, and 1822, c. 104, providing for a registration of voters in Boston, and requiring that, previously to an election, the qualifications of voters should be proved, and their names be placed on an alphabetical list or register, were not to be regarded as prescribing a qualification in addition to those which, by the Constitution, entitled a citizen to vote, but only as reasonable regulations of the mode of exercising the right of voting which it was competent for the Legislature to make. But while it is held to be within the proper limits of legislative power to provide suitable regulations for exercising the right of suffrage in a prompt, orderly, and

convenient manner, the court, speaking through Chief Justice Shaw, was careful to add : " Such a construction would afford no warrant for such an exercise of legislative power, as, under the pretence and color of regulating, should subvert or injuriously restrain the right itself. . . . . It [the Constitution] fixed the qualifications of voters with precision, and left all the rest to be regulated by law. . . . . The Constitution, by carefully prescribing the qualifications of voters, necessarily requires that an examination of the claims of persons to vote, on the ground of possessing these qualifications, must at some time be had by those who are to decide on them. . . . . If then the Constitution has made no provision in regard to the time, place, and manner, in which such examination shall be had, and yet such an examination is necessarily incident to the actual enjoyment and exercise of the right of voting, it constitutes one of those subjects, respecting the mode of exercising the right, in relation to which it is competent to the Legislature to make suitable and reasonable regulations, not calculated to defeat or impair the right of voting, but rather to facilitate and secure the exercise of that right."

If section 7 of the St. of 1885, *c.* 345, were general in terms, and allowed no person to register as a voter until he had possessed the requisite qualifications for a period of thirty days, it would be difficult to maintain its constitutionality. It would still provide for adding another qualification to those required by the Constitution, as much as if the period of domicil within the town or the Commonwealth, required by the Constitution before voting, were extended to a longer period. *State* v. *Williams*, 5 Wis. 308. *Quinn* v. *State,* 35 Ind. 485. The Constitution does not provide that the qualifications it requires shall be possessed by the voter for any period before the election, nor has it ever been held that this was necessary. To add this requirement before one can be registered as a voter, is certainly to increase the qualifications. *Kilham* v. *Ward*, 2 Mass. 236. *Bridge* v. *Lincoln,* 14 Mass. 367. *Humphrey* v. *Kingman,* 5 Met. 162, 165.

In reply to an inquiry by the House of Representatives, as to whether one who had been, but had ceased to be, a pauper, must have ceased to be such for any definite period before he could

exercise the right of suffrage, it was said by this court: "It is no more required that the voter shall have ceased to be a pauper, or under guardianship, a year or six months before the election, than that he shall have been a citizen, or of age, during a like period. It has never been doubted that minors, having the other requisite qualifications, become qualified to vote immediately upon arriving at full age. And by uniform usage, recognized and approved in an opinion given to the Honorable House last year, persons otherwise qualified, who have been naturalized at any time before the election, have been deemed entitled to vote. The necessary conclusion appears to us to be, that, by the third article of Amendment of the Constitution of the Commonwealth, the disqualification of pauperism or guardianship, like that of alienage or nonage, is not required to have ceased to exist for any definite period of time, in order to entitle a man actually free from every such disqualification, and duly qualified in point of residence and of payment of taxes, to exercise the right of suffrage." *Opinion of Justices*, 124 Mass. 597.

Nor, if such a law were general, is it easy to see how it could be defended upon the ground that it was a reasonable regulation for the purpose simply of ascertaining qualifications and determining whether an applicant actually possessed them. Every system of registration of voters contemplates that the registration will be completed, and that the list of voters will be prepared, before voting actually commences. No system would be just that did not extend the time of registration up to a time as near that of actually depositing the votes as would be consistent with the necessary preparation for conducting the election in an orderly manner and with a reasonable scrutiny of the correctness of the list. While cases may be imagined where the right to vote might depend on a somewhat complicated inquiry, ordinarily the facts on which it depends are simple and susceptible of rapid investigation. Because a difficult inquiry is possible, to provide that all citizens proving themselves to possess the requisite qualifications as voters should not be allowed to register as such for thirty days thereafter, and thus be obliged to show in addition that they had possessed them for that length of time, might be held an unreasonable regulation in regard to the exercise of the privilege of suffrage. In many instances the

right to vote might itself accrue, as by expiration of time, by payment of taxes, &c., within the thirty days which precede the registration.

But serious as these objections would be to the constitutionality of a general law applicable to all classes of citizens, it is not necessary now to consider them, as the section of the statute in question presents a difficulty even more serious. It undertakes to prevent a single class of citizens, namely, those who are naturalized, possessing all the qualifications established by the Constitution of the Commonwealth, from exercising the right with which that Constitution invests them, for a period of thirty days, by forbidding the registrars of voters to register them during that period. All citizens must stand equal before the law, and the statute, assuming them to be citizens, imposes this prohibition upon them as citizens of a specified class. A statute regulating the exercise of the right of suffrage, or the ascertainment of the qualifications of voters, must not only be reasonable in its character, but uniform and impartial in its application. If it were possible to impose a period of probation upon all qualified citizens before they were entitled to exercise the privilege, it certainly is not possible under the Constitution to select a single class and impose it on this class alone. "A registry act," says Mr. McCrary in his work on Elections, § 8, "which should undertake to require a longer residence, prior to the time of voting, than that required by the Constitution, or which should require the payment of taxes not required to be paid by constitutional provision, or which should impose upon a particular class of citizens conditions and requirements not required of all others, would be void."

It was suggested at the argument, that the section of the statute here in question might be upheld as a reasonable regulation to protect the public from possible fraud in obtaining certificates of naturalization, and that the delay of thirty days before naturalized citizens are permitted to register allows this investigation. But the board of registrars is not competent to pass upon the question whether a certificate of naturalization was erroneously granted, nor can such a certificate be thus attacked before them collaterally. The only question upon this part of their inquiry into the qualifications of the applicant is whether

he is in fact the person named in the certificate he produces, if such certificate be itself properly authenticated. It is a question of identity solely.

No argument in favor of the constitutionality of the section can be founded upon any peculiarity in the situation of naturalized citizens, which renders an inquiry in regard to their qualifications different from similar inquiries when applied to all other citizens. The regulation which it assumes to make is partial, and calculated injuriously to restrain and impede, in the exercise of its rights, the class to which it applies, in that it denies to this class, for the period of thirty days, the exercise of a right which the Constitution has conferred upon it. There is no warrant for this within the just and constitutional limits of the legislative power, which permits reasonable and uniform regulations to be made as to the time and mode of exercising the right of suffrage, and as to the ascertainment of the qualifications of voters. We must therefore pronounce section 7 of the St. of 1885, c. 345, to be unconstitutional.

It is not contended by the defendants that the action cannot be maintained, unless the statute in question is constitutional. See *Kilham* v. *Ward, ubi supra; Lincoln* v. *Hapgood,* 11 Mass. 350, 353; *Blanchard* v. *Stearns, ubi supra; Larned* v. *Wheeler,* 140 Mass. 390.

The case is to stand for trial, and the entry will be,

*Demurrer overruled.**

*C. T. Russell, Jr.,* for the plaintiff.
*C. J. McIntire,* for the defendants.

---

\* On May 31, 1887, the St. of 1885, c. 345, § 7, was repealed by the St. of 1887, c. 329.