**SMITH et al. v. BLACKWELL, Secretary of State, et al.**

District Court, E. D. South Carolina, Columbia Division.

Sept. 17, 1940.

M. W. Seabrook, of Sumter, S. C. (A. S. Merrimon, of Sumter, S. C., and C. B. Ruffin, of Bishopville, S. C., of counsel), for plaintiffs.

990

John M. Daniel, Atty. Gen., of South Carolina, and T. C. Callison, Asst. Atty. Gen., of South Carolina, for defendants.

LUMPKIN, District Judge.

This matter comes before me on a summons and complaint for a declaratory judgment in favor of the plaintiffs, the grounds therefor being more fully hereinafter set forth.

The defendants served a motion to dismiss the complaint under Rule 12(b), Section (6) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, one of the grounds being "the complaint does not state a claim on which relief can be granted."

Answer was served at the same time that the motion to dismiss was served.

The complaint sets out substantially the following grounds for relief:

(a) That the plaintiffs are citizens, taxpayers and qualified electors of the State of South Carolina and candidates for Congress and for Presidential Electors in said State and bring this action in their own right and on behalf of all others similarly situated.

(b) That defendant, W. P. Blackwell, is Secretary of State of South Carolina and ex-officio a member of the State Board of Canvassers and that the other defendants are Commissioners of Federal Elections for certain counties in this State and are made parties as representative of all Federal Election Commissioners in the State.

(c) That W. P. Blackwell, in his capacity as Secretary of State, compiles and publishes election laws of the State and instructions and directions to Commissioners and managers of elections who conduct general elections under his instructions and directions.

(d) That pursuant to Article I, Section 4, of the Constitution of the United States, Congress has made and altered regulations in respect to the election of Senators, and Members of Congress; that Acts of Congress from time to time have been adopted regulating the time for the election of Senators, manner of certification thereof, reapportionment of Representatives, election of Representatives by districts, etc., and the manner of voting, and in other respects such as set forth in the Federal Corrupt Practices Act and an Act to prevent Pernicious Political Activities, commonly called "The Hatch Act", also Title 2, Section 9 of the Code of Laws of the United States of America, 2 U.S.C.A. § 9, which prescribes that all votes for representatives in Congress must be by written or printed ballot, or voting machine, the use of which has been duly authorized by the State law.

(e) That the plaintiffs contend that the several Acts of Congress referred to have had the legal effect of annulling State legislation upon the subject of the conduct of elections for Presidential Electors, Senators and Representatives to Congress and left the matter entirely and exclusively a subject of Federal regulations, and that this action is brought for the purpose of ascertaining the true, legal interpretation of said statutes and provisions of the Constitution and thus Federal questions are presented to the Court affording this Court jurisdiction and that the plaintiffs are entitled to a declaratory judgment in the premises.

(f) The plaintiffs further allege that the true legal interpretations of the statutes and constitutional provisions is that all votes for the respective offices must be by written or printed ballot and that the word "ballot" implies secrecy and alleges that such secrecy can be had only by placing all names of candidates for the respective offices regardless of party affiliation on the same ballots, something similar to the Australian ballot system should be used in general elections in the State;

(g) The complaint also states the method of voting permitted by the State law of the State of South Carolina which is that each political party is authorized to put out its own separate ballots, having printed thereon only the names of its own candidates and no others, and contend that the only way secrecy of the ballot can be assured is to have the names of all candidates printed on the ballots. There are many other allegations about the method of conducting elections in the State of South Carolina, which the plaintiffs contend deny them the secrecy of the ballot and the prayer of the complaint is as follows:

"Wherefore, the plaintiffs pray for a declaratory judgment under the aforesaid Federal Declaratory Judgment Act, adjudging, and declaring the rights of the plaintiffs and all other qualified electors of the State of South Carolina respecting all the matters in controversy as set forth in this complaint, and properly construing the aforesaid statutes and Constitutional provisions, to the end:

"(a) That there shall be a secret ballot in the general elections of South Carolina;

"(b) That the secrecy thereof shall be in substance and not mere pretensive form, by ordering the names of all candidates for all political parties to be printed on the same tickets, which may be marked in private and curtained booths according to the principles of the so-called Australian System of voting, or any other system that will in truth and fact assure secrecy; and that this honorable Court do carry out its determinations and adjudications by ordering and directing the Defendants and all other election officers now to proceed in the premises; by enjoining the use of any other form of ballot than the aforesaid and of any other method of voting than that herein prayed for, in all general elections in South Carolina; and that this Honorable Court do grant such other and further relief as may be necessary and proper herein."

The motion of the defendants to dismiss the complaint under Rule 12 (b), Section 6, of the Rules of Civil Procedure is based on the positions:

(a) "That the plaintiffs by their Complaint undertake to invoke the aid of this Court to prescribe the method by which to conduct general elections in the State of South Carolina, although the Congress of the United States has left the regulations and conduct of general elections to the several states";

(b) "That there is no actual controversy between the parties to this action which will give this Court jurisdiction to grant the declaratory relief prayed for in the complaint";

(c) "Because the Complaint shows on its face that the election laws of South Carolina conform to the Constitutional provision which provides that all votes for representatives in Congress must be by written or printed ballots, or voting machine, the use of which has been duly authorized by the State law, and that it appears on the face of the Complaint that South Carolina conducts its general elections under State laws which provides for the election of Representatives in Congress by written or printed ballot";

(d) "That the Complaint shows that the plaintiffs do not allege that they are registered qualified electors and therefore they have no special interest in the matter set out in the Complaint";

(e) "That the only relief demanded in the Complaint is of a political nature and that an Equity Court has no jurisdiction over a suit to protect invaded political rights".

The motion to dismiss and the answer, in which was incorporated a motion to dismiss the complaint, were filed on the same date. Upon filing the pleadings the Court fixed the time and place for a hearing at Aiken, S. C., on the 27th day of September, 1940, but realizing the importance of the time element in this particular case, and wishing to give the plaintiffs the earliest possible hearing, the time and place of trial were changed to Columbia, S. C., on September 17, 1940.

Attorneys for the defendants moved that the motion to dismiss the complaint be first heard whereupon plaintiffs' attorneys requested the Court to permit the introduction of testimony before considering the motion to dismiss.

In keeping with the purpose and spirit of the new rules of Civil Procedure, I concluded it was proper to hear the motion to dismiss, and if it should be shown that the complaint did not allege a cause of action which would give this Court jurisdiction under the Declaratory Judgment Act, 28 U.S.C.A. § 400, it would be a useless waste of time to go into a trial of the case.

Having determined to hear the motion to dismiss, attorneys for the defendants were given the right to open and reply and each side was first allotted one hour to present its case, the defendants being given fifty minutes in opening argument and ten minutes in reply, while the attorneys for the plaintiffs were given one hour, which time was extended to one hour and forty-five minutes.

After hearing arguments I am convinced that the complaint does not state a claim or cause of action which would give this Court the right to grant the relief demanded in the complaint.

█ The plaintiffs invoke the provisions of the Federal Declaratory Judgment Act of July 14, 1934, as a basis for maintenance of this action. It seems well settled, however, that this Act only provides a mode of procedure and its provisions do not create any new right or cause of action, and it in no manner disturbs or affects the general principle that a plaintiff must show that a controversy exists between the parties and that such controversy is within the-

jurisdiction of the United States Court. Then, and only then, does the Federal Declaratory Judgment statute become the vehicle which carries the weight of the controversy through the United States Court until finally settled by the Court of Appeals, or the Supreme Court of the United States.

It will be remembered that the plaintiffs here are not claiming jurisdiction because of diversity of citizenship and amount in controversy, but are claiming their right to appear in court because they say the Statutes of the United States and the Constitution of the United States have been violated by the defendants in their manner of carrying on general elections in South Carolina.

 Relief can only be granted under the Act in question when an actual controversy between the parties exists.

"The Federal Declaratory Judgment Act of June 14, 1934 (48 Stat. at L. 955, chap. 512, 28 U.S.C.A. § 400), in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional limitation of the exercise of judicial power to 'cases' and 'controversies,' and is operative only in respect to controversies which are such in the constitutional sense. The word 'actual' is one of emphasis rather than of definition. * * *

"A 'controversy,' in the sense in which the word is used in the Constitution in defining the judicial power of the Federal courts, must be one that is appropriate for judicial determination as *distinguished* from a *difference* or *dispute* of a *hypothetical* or *abstract* character, or from one that is academic or moot; must be definite and concrete, touching the legal relations of parties having adverse legal interests; and must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion *advising* what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Edwin P. Haworth et al., 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

In the case of Mills v. Briggs Green, 159 U.S. 651, 16 S.Ct. 132, 133, 40 L.Ed. 293, it was held: "The duty of this court, as of every other judicial tribunal, *is to decide* actual controversies by a judgment which can be carried *into effect,* and *not to give opinions upon moot questions or abstract propositions, or to declare principles* or *rules of law which cannot affect the matter in issue in the case before it."*

In the case of Wood v. State ex rel. Lee, 133 Tex. 110, 126 S.W.2d 4, 9, 121 A.L.R. 931, 938, it is said: *"It is not for the courts to attempt to direct what laws the Legislature shall enact to comply with it."*

In order to determine whether or not this complaint alleges a cause of action under Article I, Section 4 of the Constitution of the United States and the several Acts referred to in the complaint it is only necessary to refer to the Article of the Constitution in question, which reads as follows: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators."

In addition to the above constitutional provision, Congress enacted legislation providing that "votes for Representatives in Congress must be by written or printed ballot, or voting machine the use of which has been duly authorized by the State law; and all votes received or recorded contrary to this section shall be of no effect." Title 2, Section 9, of the United States Code of Laws, 2 U.S.C.A. § 9.

South Carolina constitutional provisions as to election:

Article I, Section 9, Suffrage: "The right of suffrage, as regulated in this Constitution, shall be protected by law regulating elections and prohibiting, under adequate penalties, all undue influences from power, bribery, tumult or improper conduct."

Article I, Section 10: "All elections shall be free and open, and every inhabitant of this State possessing the qualifications provided for in this Constitution shall have *equal right to elect* officers and be elected to fill public offices."

In keeping with the Federal Constitution and Acts of Congress, and the provisions of the State Constitution of South Carolina governing general elections, laws have been enacted by the General Assembly of this State which prescribe the form of ballot to be used in general elections, all of which is conceded by the plaintiffs, but they contend that the election laws of South Carolina do not protect the secrecy of the ballot.

I cannot acquiesce in the argument of distinguished counsel for the plaintiffs that the secrecy of the ballot is not preserved in the South Carolina general elections. This question has been definitely settled against the contention of the plaintiffs in the recent case of Gardner et al. v. Blackwell et al., 167 S.C. 313, 166 S.E. 338, 342.

In the Gardner case, the plaintiffs recognizing the jurisdiction of the State Courts over matters pertaining to the conduct of general elections brought their action in the courts of South Carolina and sought the exact relief now being sought in the Federal Courts in the case at bar. The Gardner case was well considered by the Supreme Court of South Carolina and it is proper to quote from this decision to show the method of voting used in South Carolina and sustained by the courts of South Carolina:

"The 'custom and practice,' admitted by the petitioners, has been for any political party desiring to take part in a general election to have printed and provided for use of the voters such ballots as they desired, on which appeared only the names of the candidates of that party, and the respective offices for which such candidates were voted. That 'custom and practice,' in our opinion, has conformed with the statutory provisions; certainly they have not been in conflict therewith.

"The statute, relating to the subject, provides that the ballots voted shall be 'of such width and length as to contain the names of the officer or officers * * * to be voted for. * * *' After prescribing that the ballot shall be 'without ornament, designation, mutilation, symbol or mark of any kind whatsoever,' there follows the clear exception that the only thing appearing on the ballot is to be 'the name or names of the person or persons voted for and the office to which such person or persons are intended to be chosen.'

"The particular question is not now before us, but, on account of the exception before quoted, there may be some merit in the suggestion advanced by counsel for the respondents that it is improper for the ballot to have on it the name or names of candidates or persons who are not intended to be voted for.

"There is no provision in our Constitution or statutes as there appears to be in the statutes of some other States, regarding the certifying of candidates to any board or officer for the general election. It is not necessary in South Carolina for a person, who is qualified, to become a candidate for any office in the general election, to have the indorsement, nomination, or certification of any political party or group of citizens or voters before he may become a candidate and be voted for in the general election. Any citizen qualified to hold the office to which he aspires may, on his own initiative, become a candidate for such office in the general election. More than that, any voter has the legal right in a general election to cast his ballot for any person for any particular office, even if the person desired to be voted for is not a candidate of any political party, or has not even announced on his own individual responsibility his candidacy for the office.

"With the right of any political party to present candidates for office, and with the right of any citizen to become a candidate for office, for which he is qualified, in the general election, and with the right of the voter to vote for whom he pleases, all being so clearly apparent, it is inconceivable that this court should enjoin any party to this proceeding or the managers of election from allowing a qualified voter to vote in the election a ballot other than the particular kind of ballot asked to be used by the petitioners. To do so would not only be violative of the statute law, but would deny citizens, who are not members of the Democratic or Republican Parties, such as Socialists, Prohibitionists, Farm Laborites, and independent voters, 'the free exercise of the right of suffrage in this State,' guaranteed to them by section 15 of article 2 of our Constitution, to which provision the petitioners themselves have appealed."

Since 1894 Congress has left the regulation of general elections exclusively to the States and I can find no law which has changed election regulations and which has taken same from the States. I have examined the several constitutional provisions mentioned in the complaint and all of the statutory provisions referred to in the complaint with the view of determining whether or not there is anything in the contention of the plaintiffs which would warrant this Court in assuming jurisdiction and granting the relief prayed for.

There are two conditions where the Federal authorities undertake to regulate suf-

frage in the states and they are the Fifteenth and Nineteenth Amendments to the Federal Constitution which provide that the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude" and on account of sex. The plaintiffs do not contend that the right of any citizen has been violated under these provisions of the Constitution.

■ Except as above outlined the question of suffrage is left entirely to the State.

*The Constitution of the United States does not confer the right of suffrage upon anyone.* Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627.

*The right of suffrage is a privilege which the elector enjoys under the constitution and laws of his State.* United States v. Cruiksank, 92 U.S. 542, 23 L.Ed. 588, 590. Also cited in Ex parte Siebold, 100 U. S. 371, 25 L.Ed. 717, 725.

The guaranty against discrimination on account of race, color, or previous condition *is the only new constitutional right vested in citizens of the United States by the 14th and 15th Amendments.* United States v. Reese, 92 U.S. 214, 23 L.Ed. 563.

Subject to the limitations contained in the Federal Constitution, *the elective franchise is under the control of the Sovereign power of the State expressed in constitutions or statutes properly enacted.* Kinneen v. Wells, 144 Mass. 497, 11 N.E. 916, 59 Am.Rep. 105; Cooley Const.Lim. Page 752.

Reference is made to "The Corrupt Practices Act", 2 U.S.C.A. § 241 et seq., but this Act has no application here. This Act only deals with political campaigns, the expenditure of funds and corrupt practices generally. "The Pernicious Activities Act" of 1939 commonly called "The Hatch Act", 18 U.S.C.A. §§ 61–61k, is also referred to in the complaint but an examination of this Act reveals that it is only penal in its nature and only provides a means of punishment for those who may violate the terms of the Act and certainly could not reach some anticipated future conduct of election officers.

■ A careful examination of the complaint in its entirety, and for the purpose of this motion assuming that every allegation thereof is true, does not disclose any cause of action upon which this Court can act. I know of no law of the State of South Carolina, or of the United States, which would require the printing of ballots, the management of the ballots and the manner of conducting the general elections as prayed for by the plaintiffs. The State of South Carolina has most liberal election laws and a voter who is registered and qualified to vote is required to use no particular form of ballot except that the same shall be printed or written, or partly printed and partly written on evenly cut white paper of sufficient size to contain the name of the office and of the candidate or candidates to be voted for. Each political party, or each individual, may prepare his own ballot when and where he pleases. There is no law requiring the voter or the political parties to place their ballots on a table at the election places. This is only done as a matter of convenience by any party wishing to do so.

■ The prayer of the complaint could not be granted to have all candidates of both, Democratic and Republican, parties printed on the same ballot for the reason that to do so would be in violation of the law of the State of South Carolina. There is no officer before this Court who has any duty under the law to prepare ballots and this Court is without power to create a law and to name officers to enforce it, which would be necessary if the prayer of the complaint is granted. Again if the prayer of the complaint should be granted and a ballot printed containing the names of the Democratic and Republican candidates only, it would amount to a discrimination against any other political party or individual who might wish to enter themselves as candidates for any particular office.

The Court dictated to the reporter an order at the time of the hearing dismissing the complaint, which will be made a part of the record, but at that time reserved the right to file a further order as of the date of the hearing, giving further reasons and citing authorities for the action taken by the Court. This order has, therefore, been prepared for that purpose.

For the reasons hereinabove stated and it clearly appearing that the complaint does not state a claim or cause of action giving this Court jurisdiction in the premises, the motion of the defendants is granted and the complaint is hereby dismissed.

And it is so ordered.