## TAHIR ERK v. GLENN L. MARTIN CO.

### No. 4706.

United States Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1941.

Louis O. Bergh, of New York City, and Helen Sherry, of Baltimore, Md. (Turnbull & Bergh, of New York City, and Max Rhoade, of Washington, D. C., on the brief), for appellant.

W. Randall Compton, of Baltimore, Md. (David R. Owen, Semmes, Bowen & Semmes, and William A. Fisher, Jr., all of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from an order granting a motion to dismiss the action because the complaint fails to state a claim upon which relief can be granted and, in turn, denying a motion for leave to file an amended complaint. See Tahir Erk v. Glenn L. Martin Co., D.C.Md.1940, 32 F. Supp. 722.

■ In considering a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, we must treat every allegation of the complaint as admitted. See Leimer v. State Mut. Life Assur. Co., 8 Cir., 1940, 108 F.2d 302, 305; Smith v. Blackwell, D.C.E.D.S.C.1940, 34 F.Supp. 989, 994. See also Woodall v. Clark, 4 Cir., 1918, 254 F. 526. Hence, inasmuch as the appellee (hereinafter called the defendant) has substantially approved of the summary of the complaint in the brief of the appellant (hereinafter called the plaintiff), we will adopt this summary with certain minor changes. The following is a summary of the complaint that was filed on June 21, 1939, in support of the plaintiff's claim for damages for the alleged breach of a written sales-agency contract:

That in October, 1930, the defendant, a corporation doing business in Maryland under the name of the Glenn L. Martin Company, made an agreement with Erdogan, Ltd., a limited company, of which A. Djemil Tahir Erk, the plaintiff, was co-owner, doing business in Turkey, which agreement is represented by three letters, copies of which are annexed to the complaint as exhibits and made a part of the complaint. (Pars. 2 and 3.)

That defendant, engaged in the manufacture of military airplanes exclusively, employed Erdogan, Ltd., as its agent, for an indefinite period of time, to negotiate with the Republic of Turkey for the sale of military airplanes manufactured by the defendant, with the right of either party to terminate such employment upon sixty (60) days' notice; and with a commission of five (5%) percent on all sales; and that such commission upon cancellation "should be payable to Erdogan, Ltd., upon any business which the plaintiff may have instigated prior to the date of said cancellation, provided said business be closed by the defendant within six months after the date of cancellation of such employment". (Par. 3.)

That Erdogan, Ltd., "proceeded to and did negotiate with various officials of the Republic of Turkey for the purpose of inducing the said Republic of Turkey to purchase military airplanes manufactured or to be manufactured by the defendant". (Par. 4.)

That in April, 1932, Erdogan, Ltd., went into liquidation and that the plaintiff, who had been co-owner, succeeded to and carried on the business of Erdogan, Ltd., and that the plaintiff, with the consent of the defendant, succeeded to all the rights and obligations of the said Erdogan, Ltd., under the said contract. That thereafter the plaintiff "continued to act under said contract for the defendant, and zealously and diligently continued negotiations with the Republic of Turkey pursuant thereto for a long period of time and at considerable expense to the plaintiff, and while such negotiations were in progress" in July, 1933, the defendant notified the plaintiff that it had entered into an agreement with the United States of America "whereby the defendant undertook not to export or enter into negotiations for the sale of military airplanes to any foreign country" and further advised plaintiff that under such circumstances it was cancelling the agency; and that thereafter the plaintiff wrote the defendant requesting "that the said agency contract should be continued" and that thereafter the defendant acquiesced in this request, and it was then "mutually agreed" to disregard the letter of cancellation, and that thereafter the plaintiff "resumed and continued its negotiations with the officials of the Republic of Turkey" until June 14, 1935, when the plaintiff received a cable from the defendant purporting to cancel his appointment; and that at the time "he was engaged in active sales negotiations with the officials of the Republic of Turkey which was then ready, willing and able to purchase military airplanes from the defendant as soon as the defendant was ready, willing and able to sell the same." (Par. 5.)

"That the period following June 14, 1935, during which the plaintiff was entitled under the said agency agreement to commissions on business or sales of which he was the instigating cause, did not begin to run earlier than the date, unknown to the plaintiff, in June, 1936, when the United States of America removed the said ban, restriction or embargo, and permitted the defendant to sell its aircraft to the Re-

public of Turkey, whereupon the defendant advised certain officials of the Republic of Turkey that it was ready, willing and able to sell to the Republic of Turkey military airplanes to be manufactured by it, and thereafter, sometime during the month of December, 1936, the defendant received an order from the Republic of Turkey for military airplanes of the value of more than two million dollars ($2,000,-000.00) which order has been filled and payment therefor received by the defendant; and the plaintiff alleges that he was the instigating and procuring cause of the aforesaid sale and that the aforesaid cable dated June 14, 1935, purporting to cancel the employment of the plaintiff, which cable and purported cancellation plaintiff then and always has protested, was sent by the defendant to the plaintiff with full knowldege on the part of the defendant * * *[5] that at its request the Department of State of the United States of America would consent to the sale of military airplanes by the defendant to the Republic of Turkey, and with full knowledge on the part of the defendant that the Republic of Turkey was ready, willing and able to purchase from the defendant a large number of military airplanes as soon as the defendant was ready, willing and able to sell the same and that such purported cancellation of the employment of the plaintiff was for the purpose of endeavoring to deprive the plaintiff of his just rewards for his efforts in instigating such sale; and without any fault or default on the part of the plaintiff in the performance of his duties and undertaking in the premises, the defendant has wholly neglected, failed and refused to pay the plaintiff the said commission of five per cent (5%) on the amount of said sale, or any part thereof, or any reward or compensation for his said services whatsoever, though frequently requested to perform its obligations to the plaintiff." (Par. 7.)

The eighth paragraph states a claim in quantum meruit, based on 5% of the sales price; and the ninth paragraph states that the exact amount of the sales price is unknown to the plaintiff, except that plaintiff is informed and believes and therefore avers that such price was more than $2,000,000.

The prayer for relief asks judgment in the amount of $175,000 or such additional amount as the plaintiff may be entitled to, and a full accounting and disclosure respecting all sales by the defendant to the Republic of Turkey that may be germane to the suit.

On July 6, 1939, the defendant's counsel filed a written motion to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted. After the oral argument of the respective counsel on February 2, 1940, Judge Coleman granted orally the defendant's motion to dismiss the action. Counsel for the plaintiff immediately moved for leave to file an amended complaint; but, though requested by the court, he did not state the nature and substance of the proposed amendment. The motion to file an amended complaint was denied. The court, however, did grant the plaintiff's motion to file within 10 days a memoranda of law in opposition to the defendant's motion to dismiss. On February 12, 1940, the plaintiff filed a written motion for leave to amend the original complaint and, in addition, submitted a memoranda of law in opposition to the defendant's motion to dismiss and in support of the proposed amended complaint. The plaintiff's motion for leave to amend was orally denied on February 26, 1940; and, in a written opinion filed on April 20, 1940, the defendant's motion to dismiss the complaint was granted. Final judgment thereon was entered on May 2, 1940.

In support of its motion to dismiss, the defendant takes the position that it had contracted to compensate the plaintiff only for business actually secured by him; that this contract was cancellable by either party upon sixty days' written notice; that, acting within its contractual right, it had cancelled this contract sixteen months before it had received the alleged $2,000,000 aircraft order; that this order was not completed until after the plaintiff's eighth-month grace period had elapsed and after all of the plaintiff's contractual rights had expired; and that there had been no breach of the contract in either the termination of the agency relationship or in the refusal to pay the claimed commissions.

The plaintiff, on the other hand, makes four different contentions in support of his claim: (1) that the defendant cancelled the agency in bad faith for the purpose of depriving the plaintiff of his commission at a time when the plaintiff, in the words of the contract, had "instigated a sale"; (2) that, notwithstanding the at-

tempted cancellation, the plaintiff was entitled to a reasonable time after the lifting of the government ban in which to make sales and earn commissions; (3) that the eight-months' post-cancellation period could not begin to run until the aforementioned ban was lifted and that, as the sales in question took place within six months after the lifting of the government ban, the plaintiff was entitled to his commission; (4) that the plaintiff has an alternative claim in quantum meruit.

■ We are mindful that in weighing the validity of a motion to dismiss for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. Our duty, rather, is to consider whether in the light most favorable to the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim. See Karl Kiefer Mach. Co. v. United States Bottlers Machinery Co., 7 Cir., 1940, 113 F.2d 356, 357; Leimer v. State Mut. Life Assur. Co., supra, 108 F.2d 302 at page 304. See also Bayley & Sons, Inc., v. Blumberg, 2 Cir., 1918, 254 F. 696, 698. We are of the opinion that, under such a consideration, the complaint states a claim for breach of contract and, consequently, that the defendant's motion to dismiss was erroneously granted.

■ Notwithstanding the presence of the mutual revocation clause in the contract in question, the complaint would contain a legally cognizable claim if it were alleged, in effect, "that the defendant cancelled the agency in bad faith for the purpose of depriving the plaintiff of his commission at a time when the plaintiff, in the words of the contract, had 'instigated a sale'." See Restatement of Agency § 454; cf. Hill v. Iglehart, 1924, 145 Md. 537, 550, 551, 125 A. 843, 848; Howard v. Street, 1915, 125 Md. 289, 93 A. 923. As the applicable rule of law is stated in section 454 of the Restatement of Agency:

"An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished, the agent's prior efforts being the effective cause thereof."

■ We believe that paragraph 7 of the complaint (quoted above in full) amply

suggests this ground for recovery; and we, therefore, find it is not essential that we pass definitely upon the other contentions made by the defendant. A more detailed discussion, at this time, of the legal relationship existing between the plaintiff and the defendant "would, or might, prejudice a full and impartial hearing of the cause on its merits * * *." Karl Kiefer Mach. Co. v. United States Bottlers Machinery Co., supra, 113 F.2d at page 357.

Whether or not the defendant actually cancelled the contract in "bad faith" and, then, deliberately delayed in closing the orders so as to deprive the plaintiff of his commission, is a matter properly to be answered only by a complete submission of the relevant evidence. The defendant admits in its brief that if these matters were alleged the plaintiff would have a legal remedy; but the defendant denies that there has been a sufficient allegation. The defendant, however, has apparently fallen into error in its conception of the nature of a motion to dismiss for insufficiency; for it has endeavored to prove that it should ultimately prevail, and that there is no merit in the plaintiff's claim. Our task, it must not be forgotten, is to consider the quality of the allegations in the pleadings; it is for the jury to regard the quantity of the evidence at the trial.

The plaintiff alleged in paragraph 5 of the complaint that at the time he received the defendant's purported notice of cancellation (June 14, 1935) "he was engaged in active negotiations with the officials of the Republic of Turkey which was then ready, willing and able to purchase military airplanes from the defendant as soon as the defendant was ready, willing and able to sell the same." He then alleged, inter alia, in paragraph 7 that the $2,000,-000 sale was completed in December, 1936; that he was the "instigating and procuring cause" of the sale; that the defendant sent the notice of cancellation "with full knowledge" that it could succeed in having the government ban lifted, and with "full knowledge" that the Republic of Turkey was "ready, willing and able" to make the airplane purchase; that the purported cancellation of the plaintiff's employment was "for the purpose of endeavoring to deprive the plaintiff of his just rewards for his efforts in instigating such sale." Although it is true that there is no specific allegation that the defendant had deliber-

ately delayed the sales of airplanes for the purpose of avoiding the payment of the commissions, we believe that the meat of such specific allegation is at least implicit in the sweeping averments of paragraph 7.

In reaching the above conclusion, we do not intend to indicate that the instant complaint should be used as a future model. We clearly recognize the indefiniteness of the various allegations stated therein, and we are mindful of the difficulties which confronted Judge Coleman. Nevertheless, we feel that our actions are controlled by both the letter and the spirit of the applicable Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following § 723c; for it is there provided that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." See Rule 1. Furthermore, Rule 8(f) emphasizes that pleadings "shall be so construed as to do substantial justice."

Under the Rules of Civil Procedure, supra, there are no technical forms of pleading. See Rule 8(e) (1); also, The Federal Rules of Civil Procedure (1939) 25 Virginia Law Review 261, 263. The only requirement for the form of a pleading is that it shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief". See Rule 8(a) (2). The plaintiff's complaint surely meets these liberal requirements. To have amplified the complaint and to have tested it for any vital defects, the defendant might have moved for a more definite statement or for a bill of particulars. In this manner, the defendant might have exposed any material flaws existing in the plaintiff's allegations; and such latter motion could have at least assisted the defendant in preparing the responsive pleading. See Commentary, 2 Fed. Rules Service, page 641; cf. Whitaker v. Whitaker Iron Co., D.C.N.D.W.Va.1916, 238 F. 980, 992 (Equity Rule 20). See also Mahoney v. Bethlehem Engineering Corp., D.C.S.D.N.Y.1939, 27 F.Supp. 865; Mendola v. Carborundum Co., D.C.W.D.N.Y.1938, 26 F.Supp. 359.

In suggesting the use of a motion for a more definite statement or for a bill of particulars (cf. Marin v. Knopf, Dist. Ct., S.D.N.Y., October 3, 1940, 1 F. R.D. 436), we are not condemning the use of the motion to dismiss for "failure to state a claim upon which relief can be granted." Rule .12(b) (6). As Judge Sanborn indicated in Leimer v. State Mut. Life Assur. Co., supra, 108 F.2d at pages 305, 306, the motion to dismiss for insufficiency bridges the material gaps that might appear in a complaint: "Such a motion, of course, serves a useful purpose where, for instance, a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted to him, or a claim which the averments of the complaint show conclusively to be barred by limitations."

The motion to dismiss takes the place of the old demurrer and, in the presence of faulty allegations, is often the proper motion for testing the sufficiency of a claim. See Commentary, 3 Fed. Rules Service, page 674; Sheehan v. Municipal Light & Power Co., D.C.S.D.N.Y.1940, 1 F.R.D. 256, 257; cf. United States v. Edward Fay & Son, D.C.E.D.Pa.1939, 31 F. Supp. 413, 414.

Our primary consideration, in the instant case, has been with the type of deficiency which would admit a motion to dismiss. It is our considered opinion that the motion to dismiss for insufficiency is applicable, as a general rule, only where it is clear and apparent to the court that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the specific claim. Leimer v. State Mut. Life Assur. Co., supra, 108 F.2d at page 306. In Hubbock v. Wilkenson, 1899, 1 Q.B. 86, 91 (C.A.), the court construed the equivalent of a motion to dismiss under the Judicature Act of 35 & 36 Vict. c. 66 (1873) (in which Act there is found the roots of our present motion to dismiss), and stated that such order would be proper only where " * * * any master or judge can say at once that the statement of claim as it stands is insufficient, even if proved, to entitle the plaintiff to what he asks." See, also, Burstall v. Beyfus, 1884, 26 Ch.D. 35, 38.

There has been no showing that the District Judge abused his exercise of discretion in refusing to grant leave to amend upon dismissing the plaintiff's complaint for insufficiency. Cf. C. E. Stevens Co. v. Foster & Kleiser Co., 9 Cir., 1940, 109 F.2d 764, reversed by Sup.

Ct. on December 9, 1940, 61 S.Ct. 210, 85 L.Ed. ——. However, inasmuch as we have reversed the lower court's judgment and overruled the motion to dismiss, we are of the opinion that the plaintiff should now be given leave to amend his complaint. The history to date of practice under the Rules of Civil Procedure shows a strong liberality among District Judges in allowing amendments under Rule 15(a). See Earhart v. Valerius, D.C.W.D.Mo.1938, 25 F.Supp. 754; Duke Power Co. v. Greenwood County, D.C.W.D.S.C.1939, 25 F. Supp. 963; Holland v. Majestic Radio & Television Corp., D.C.S.D.N.Y.1939, 27 F. Supp. 990. Cf. statement of Bramwell, L.J., in Tildesley v. Harper, 1878, 10 Ch.D. 393, 396, 397. Where the opposing party will not be prejudiced, the liberal allowance of amendment of pleadings is "a desirable complement to restriction of objections for substance and form". See Pike, Objections to Pleadings under the New Federal Rules of Civil Procedure (1937) 47 Yale L.J. 50, 65. The rule itself states that leave to amend "shall be freely given when justice so requires." Rule 15(a).

Upon inquiry from the bench of this Court, as to what plaintiff proposed to prove under the rather general allegation of his complaint, and at a suggestion from us, plaintiff proposed an amendment containing the following allegations: "That the defendant, in sending said purported cancellation, did so with the intention to delay and hold off in closing the said sales contract or business subsequently entered and closed with the Republic of Turkey until after the said six and eight months period had run, for the purpose of fraudulently, wrongfully and in bad faith endeavoring to deprive the plaintiff of his just rewards and commissions under the said agency contract, and pursuant to said intention, did in fact so delay and hold off in closing the said sales contract or business with the Republic of Turkey."

Counsel for defendant admits that the complaint as thus amended adequately states a claim; and it unquestionably makes more definite and certain the allegations which we have held sufficient. Its effect will be to narrow rather than to broaden the issues and its allowance can consequently work no injury to defendant. While we might allow the amendment here, we think it better practice to permit it to be made before the District Court in connection with further proceedings to be had upon the remand.

For the foregoing reasons, the judgment of the District Court is reversed, and the case is remanded to that court with directions to overrule the motion to dismiss and for further proceedings not inconsistent with this opinion.

Reversed and remanded.