ATTORNEY GENERAL *vs.* SUFFOLK COUNTY APPORTIONMENT
. COMMISSIONERS.

. HENRY L. HIGGINSON & others *vs.* SAME.

FRANK N. NAY & others *vs.* SAME.

TILTON S. BELL *vs.* SAME.

HERMAN HORMEL *vs.* SAME.

GEORGE F. WHIPPLE & others *vs.* SAME.

PETITIONS FOR WRITS OF MANDAMUS.

JAMES DONOVAN *vs.* SAME.

W. PRENTISS PARKER & others *vs.* SAME.

DAVID T. MONTAGUE & others *vs.* SAME.

GEORGE F. WHIPPLE & others *vs.* SAME.

PETITIONS FOR WRITS OF CERTIORARI.

GEORGE E. BROCK *vs.* SAME.

BILL IN EQUITY.

Suffolk.    September 5, 1916. — September 8, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Constitutional Law,* Apportionment of representation.  *House of Representatives.*
*Suffolk County Apportionment Commissioners.    Mandamus.    Attorney*
*General.*

On a petition by the Attorney General for a writ of mandamus addressed to the
Suffolk County apportionment commissioners elected under St. 1913, c. 835, § 390,
declaring an apportionment of representation in the legislative districts in that
county attempted to be made by the respondents to be void as not in conformity
with the Constitution and ordering them to proceed "as soon as may be" to
divide the county of Suffolk into representative districts so as to apportion the
number of representatives assigned to that county "equally, as nearly as may be,
according to the relative number of legal voters" in the several districts, a
clause in the reservation for determination of the case by this court, stating
that, if the question whether the respondents acted in good faith was material,
this court might draw conclusions from the apportionment itself, was dis-
regarded by this court, because this court has no power to decide facts in a
proceeding at law and the question of good faith, if material, was one of fact,
and it was *held* that the case must be considered by the court on the footing that
the good faith of the commissioners was presumed.

By art. 21 of the Amendments to the Constitution, which provides that a "board
of special commissioners . . . shall, on the first Tuesday of August next after
each assignment of representatives to each county . . . proceed, as soon as may
be, to divide the same into representative districts of contiguous territory, so
as to apportion the representation assigned to each county equally, as nearly

as may be, according to the relative number of legal voters in the several districts of each county," the principle of practical equality of representation among all the voters of the Commonwealth is established.

The Suffolk County apportionment commissioners elected under St. 1913, c. 835, § 390, in 1915 and in every tenth year thereafter, who are directed to "so divide said county into representative districts of contiguous territory as to apportion the representation of said county, as nearly as may be, according to the number of voters in the several districts," must perform their duties as directed by art. 21 of the Amendments to the Constitution; and, where it is manifest from the inspection of an apportionment attempted to be made by them that there is grave, unnecessary and unreasonable inequality in the representation assigned by them to different districts, the Constitution has been violated and their attempted action is void.

Among the inequalities, which were *held* to have been sufficient to make the attempted apportionment void, was the apportioning to one district of two representatives for 3,913 voters and in another district giving only one representative for 6,182 voters. Another inequality was apportioning one representative to a district with almost 5,000 voters and apportioning three representatives to another district with about 6,000 voters. There were many other similar disparities showing gross and palpable inequalities extending to a considerable number of the districts.

A petition for a writ of mandamus addressed to the Suffolk County apportionment commissioners, who had filed a report purporting to make an apportionment of representation in the legislative districts in that county which was void as in violation of art. 21 of the Amendments to the Constitution, commanding them to proceed with the performance of their duties under St. 1913, c. 835, in accordance with the provisions of the Constitution, affords the appropriate form of relief and is a remedy expressly provided by § 502 of the statute named for enforcing the provisions of that chapter.

The remedy by mandamus described above is available to a citizen and voter interested in the execution of the laws.

In the case above described it was *held*, that, the public interests being involved, the Attorney General might institute and maintain a petition for a writ of mandamus to vindicate the public right.

In the case above described it was *held* that in issuing the writ of mandamus no specific time need be fixed for the completion by the commissioners of their work, it being assumed that they would be actuated by a consciousness of serious public duty with the obligations thereby entailed.

RUGG, C. J. These proceedings are brought to test the legality of the division into representative districts of the fifty-four representatives to the General Court apportioned to Suffolk County by St. 1916, c. 270, § 24. This division is required to be made by a board of nine commissioners elected by the voters of Suffolk County. St. 1913, c. 835, § 390, provides as follows:

"At the annual State election in the year nineteen hundred and fifteen, and in every tenth year thereafter, nine commissioners shall be elected for the county of Suffolk, for the performance of the duties

hereinafter specified. Five of said commissioners shall be residents of and voters in the city of Boston and shall be elected by the voters of that city; two shall be residents of and voters in the city of Chelsea and shall be elected by the voters of that city; one shall be a resident of and a voter in the town of Winthrop and shall be elected by the voters of that town; and one shall be a resident of and a voter in the town of Revere and shall be elected by the voters of that town. Said commissioners shall hold office for one year from the first Wednesday of January next after their election. At their first meeting, they shall organize by choosing a chairman, who shall be one of their number, and a clerk. The city of Boston shall provide them with a suitable office and room for hearings and shall allow and pay to them for compensation a sum not exceeding five hundred dollars each, said sum to be determined by the Governor and Council, and a further sum of not more than seven hundred dollars for clerk hire, stationery and incidental expenses.

"The said commissioners shall, on the first Tuesday of August next after the Secretary of the Commonwealth shall have certified to them the number of representatives to which the county of Suffolk may be entitled, as determined by the General Court, assemble in the city of Boston, and, as soon as may be, shall so divide said county into representative districts of contiguous territory as to apportion the representation of said county, as nearly as may be, according to the number of voters in the several districts. Such districts shall be so formed that no ward of a city and no town shall be divided, and no district shall be so formed that it shall be entitled to elect more than three representatives. . . ."

One of the commissioners has deceased and the remaining eight are the respondents in each of the petitions and the defendants in the bill in equity in which the Secretary of the Commonwealth also is joined as a defendant.

A report has been filed by the commissioners. The division into representative districts therein set forth is assailed on the ground that it has not been made in accordance with the requirement of the Constitution. The pertinent provision of the Constitution is in art. 21 of the Amendments, and is as follows:

"A census of the legal voters of each city and town, on the first day of May, shall be taken and returned into the office of the Secretary of the Commonwealth, on or before the last day of June, in the year one thousand eight hundred and fifty-seven;, and a census of the inhabitants of each city and town, in the year one thousand eight hundred and sixty-five, and of every tenth year thereafter. In the census aforesaid, a special enumeration shall be made of the legal voters; and in each city, said enumeration shall specify the number of such legal voters aforesaid, residing in each ward of such city. The enumeration aforesaid shall determine the apportionment of representatives for the periods between the taking of the census.

"The House of Representatives shall consist of two hundred and forty members, which shall be apportioned by the Legislature, at its first session after the return of each enumeration as aforesaid, to the several counties of the Commonwealth, equally, as nearly as may be, according to their relative numbers of legal voters, as ascertained by the next preceding special enumeration; and the town of Cohasset, in the county of Norfolk, shall, for this purpose, as well as in the formation of districts, as hereinafter provided, be considered a part of the county of Plymouth; and it shall be the duty of the Secretary of the Commonwealth, to certify, as soon as may be after it is determined by the Legislature, the number of representatives to which each county shall be entitled, to the board authorized to divide each county into representative districts. The mayor and aldermen of the city of Boston, the county commissioners of other counties than Suffolk, — or in lieu of the mayor and aldermen of the city of Boston, or of the county commissioners in each county other than Suffolk, such board of special commissioners in each county, to be elected by the people of the county, or of the towns therein, as may for that purpose be provided by law, — shall, on the first Tuesday of August next after each assignment of representatives to each county, assemble at a shire town of their respective counties, and proceed, as soon as may be, to divide the same into representative districts of contiguous territory, so as to apportion the representation assigned to each county equally, as nearly as may be, according to the relative number of legal voters in the several districts of each county; and such districts shall be so formed that no town or ward of a city shall be divided therefor, nor shall any district be made which shall be entitled to elect more than three representatives."

The court has jurisdiction to determine whether the commissioners in making the division have violated the requirements of this article of amendment to the Constitution. Scarcely any right more nearly relates to the liberty of the citizen and the independence and the equality of the freeman in a republic than the method and conditions of his voting and the efficacy of his ballot, when cast, for representatives in the legislative department of government. It was said in the *Opinion of the Justices*, 10 Gray, 613, at page 615, "Nothing can more deeply concern the freedom, stability, the harmony and success of a representative republican government, nothing more directly affect the political and civil rights of all its members and subjects, than the manner in which the popular branch of its legislative department is constituted." The right to vote is a fundamental personal and political right. The equal right of all qualified to elect officers is one of the securities of the Declaration of Rights, arts. 1-9. Unlawful interference with the right to vote, whether on the

part of public officers or private persons, is a private wrong for which the law affords a remedy, although it may also have significant political results. *Capen* v. *Foster*, 12 Pick. 485. *Larned* v. *Wheeler*, 140 Mass. 390. The right of every voter to participate in the election of representatives to the General Court "equally, as nearly as may be," with all his fellows is secured by the twenty-first amendment to the Constitution. An act of the Legislature limiting or in any way interfering with this right would be invalid. See *Kinneen* v. *Wells*, 144 Mass. 497. County commissioners or special commissioners in performing the duties reposed in them by the Constitution stand on no higher ground than does the Legislature in performing its constitutional functions. While the right to vote for members of the Legislature is in a sense a political right, it is also a precious personal right. The duty of dividing the authorized number of representatives among the legal voters is in a sense political, yet so far as it affects contrary to the Constitution the rights of citizens, such an infringement is cognizable in the courts when presented in an appropriate proceeding between proper parties. On principle the conclusion is irresistible that the court has jurisdiction to redress the wrongs here alleged.

The decisions of other States are numerous and harmonious to the same effect.*

The circumstance that political considerations may be connected with rights affords no justification to courts for refusal to adjudicate causes rightly pending before them. Such a controversy, even though political in many of its aspects, is of judicial

---

* *Baird* v. *Supervisors of Kings County*, 138 N. Y. 95. *State* v. *Cunningham*, 81 Wis. 440. *State* v. *Cunningham*, 83 Wis. 90. *Supervisors of Houghton County* v. *Secretary of State*, 92 Mich. 638. *Giddings* v. *Secretary of State*, 93 Mich. 1. *Williams* v. *Secretary of State*, 145 Mich. 447. *Stevens* v. *Secretary of State*, 181 Mich. 199. *Parker* v. *State*, 133 Ind. 178. *Denney* v. *State*, 144 Ind. 503. *Brooks* v. *State*, 162 Ind. 568. *Ragland* v. *Anderson*, 125 Ky. 141. *State* v. *Wrightson*, 27 Vroom, 126. *Smith* v. *Baker*, 45 Vroom, 591. *People* v. *Supervisors of Adams County*, 185 Ill. 288, 292. *State* v. *Hitchcock*, 241 Mo. 433. *Prouty* v. *Stover*, 11 Kans. 235, 252. *State* v. *Weatherill*, 125 Minn. 336. *State* v. *Dudley*, 1 Ohio St. 437, 441. *Murphy* v. *Eney*, 77 Md. 80, 84. *Commonwealth* v. *Crow*, 218 Penn. St. 234. *Ballentine* v. *Willey*, 3 Idaho, 496, 506. *Harmison* v. *Ballot Commissioners*, 45 West Va. 179. *People* v. *Canaday*, 73 N. C. 198. The case of *Wise* v. *Bigger*, 79 Va. 269, sometimes cited as doubting the proposition, is not contrary, for no question of conformity of apportionment to the Constitution there was involved.

cognizance. *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84. *Stone* v. *Charlestown*, 114 Mass. 214. *McPherson* v. *Secretary of State*, 146 U. S. 1, 23.

There is nothing at variance with this conclusion in *Opinion of the Justices*, 10 Gray, 613. That discussion was directed wholly to the powers of the Legislature to correct alleged errors in a division of representatives. The jurisdiction of the courts was not involved in any of the questions submitted to the justices. The words of the justices must be read as applicable to the subject under consideration and not treated as of such general purport as to cover instances not then before their minds. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545. But it appears from the report of the election case of *Lothrop, petitioner,* Mass. Election Cases, (Loring & Russell's ed.) 49, 54, in reference to which that opinion was given, that the jurisdiction of the Supreme Judicial Court to correct errors in such a case was assumed by the legislative committee. Moreover, although the jurisdiction of the court was not pertinent to answers to the inquiries of the House of Representatives, it there was said in substance only that "the doings and returns [of the county commissioners, of the mayor and aldermen of Boston or of special commissioners] made conformably to the article of amendment" were conclusive. Nothing was intimated as to "doings and returns" manifestly contrary to the terms of that article of amendment to the Constitution.

The cases come before us on a "report and reservation" made by a single justice.* Against the objection of the respondents a clause was inserted to the effect that, "If the question whether the respondents acted in good faith is material, the court, in any of the said proceedings except the petitions for certiorari, may draw conclusions from the apportionment itself, notwithstanding the failure of the petitioners to join issue on the allegations of good faith contained in the answers." This clause in the reservation must be disregarded. If good faith is material, it is a fact and must be found by a tribunal authorized to try and decide facts. This court has no power to decide facts in a proceeding at law. *Electric Welding Co.* v. *Prince,* 200 Mass. 386. *Foster* v. *Boston Elevated Railway,* 214 Mass. 61. The cases must be considered on the footing that the good faith of the special commissioners is presumed.

---

* *Crosby,* J.

The particular ground of attack is that the report of the special commissioners shows that they have failed "to divide" the county of Suffolk "into representative districts . . . so as to apportion the representation assigned to" that county "equally, as nearly as may be, according to the relative number of legal voters in the several districts." Article 21 of the Amendments to the Constitution. The great principle established by this amendment is equality of representation among all the voters of the Commonwealth. That is a fundamental principle of representative government. It is pre-eminently so in a State whose Declaration of Rights declares that "all men are born free and equal," and in a nation whose Declaration of Independence asserts that "all men are created equal." There can be no equality among citizens if the vote of one counts for considerably more than that of another in electing public officers. The true spirit and meaning of the Constitution is that each voter has an equal voice in the enactment of laws and in the election of officers of the State. Such equality must be secured in all laws for the choosing of representatives in the General Court or the Constitution is violated. One voter or one group of voters cannot be given a greatly preponderating power in shaping legislation through the election of a representative or representatives by a disproportionately small number of voters as compared with another group, and still the equality between voters secured by the Constitution be preserved. Inequality of representation apparent on the face of the apportionment offends against this constitutional provision, a provision of the very essence of any conception of equality among voters, each of whom is the peer in political right of every other.

Absolute equality of representation is not required by the article of amendment. There are other inflexible conditions of the apportionment which must be observed and which prevent exactness of equality. The representative districts must be within the several counties, they cannot be formed by the division of towns or wards of cities, they must be made up of contiguous territory, and no district can be given more than three representatives. But within these limitations there must be the nearest approximation to equality of representations which is reasonably practicable. The words of the amendment, that the representatives must be apportioned upon the basis of equality "as nearly

as may be," does not mean mathematical accuracy of equality. They do not aptly express that idea. The words import some flexibility in the division. Something is left to the sound judgment of the body charged with making the apportionment and division.

But the rule established by the Constitution is plain. The total number of two hundred and forty members of the House of Representatives must first be divided by the Legislature between the several counties "equally, as nearly as may be, according to their relative numbers of legal voters," with the exception of the town of Cohasset, which, although in the county of Norfolk, is for this purpose to be treated as a part of the county of Plymouth. The commissioners are then to make the division of the several counties into representative districts. In doing this five general rules are laid down by the amendment: 1. They must proceed within their respective counties, with the single exception of Cohasset. 2. No town or ward of a city can be divided. 3. The territory of each district must be contiguous. 4. No more than three representatives can be assigned to one district. 5. The representatives must be divided so that "as nearly as may be" the same number of voters shall in every instance be entitled to an equal representation in the House. These five mandates all stand on the same footing. One is no more imperative than another. The only guide for determining equality to which resort may be had under the Constitution is the "numbers of legal voters, as ascertained by the next preceding special enumeration," provided for by the first paragraph of the twenty-first article of amendment. That article says that that enumeration "shall determine the apportionment of representatives for the periods between the taking of the census." It would be hard to conceive words expressive of a more positive and unmistakable command. Its fundamental idea is that the special enumeration of legal voters alone shall be considered in making the apportionment and division. *Opinion of the Justices,* 142 Mass. 601, 604. *Opinion of the Justices,* 157 Mass. 595.

In the performance of the duty of providing equal representation within any county, the commissioners naturally, if not necessarily, would divide the whole number of legal voters in the county by the number of representatives allotted to that county.

Thus the unit of representation or the ratio between the voters and the representatives is found. Upon this unit or ratio the representative districts must be formed, each having, as nearly as may be, in view of the other mandatory requirements of the amendment, a number of legal voters equal to the unit or ratio thus found for one representative, or twice that number for two representatives, or three times that number for three representatives. Equality in the ratio between voters and representatives amongst the several districts is the command of the people as expressed in the Constitution. The commissioners are bound by the most sacred considerations of official duty to follow this plain command of the Constitution in forming the districts and in dividing between the districts the number of representatives. This is in substance the statement of the duty of the officers charged with the duty of forming representative districts and dividing among them the representatives set out in *Opinion of the Justices*, 10 Gray, 613, 619. If each board of officers in each of the counties follows this plain rule of the Constitution, then there will be secured to every voter throughout the State that equality of influence in shaping legislation which it is the indubitable design of the Constitution to maintain.

It is not every inequality between the several representative districts which will be fatal in a constitutional sense. It is inevitable that there must be in the several districts some variation from the unit of representation found by dividing the legal voters of the county by the number of representatives apportioned to that county. These variations may be augmented where there are numerous towns and cities with different numbers of wards and of legal voters. The difficulties may be considerable. There is abundant room for the exercise of reason and judgment in the formation of the districts and in the disposition to be made of the excess or deficiency of the number of voters as compared with the unit of representation or ratio between voters and representatives, which unavoidably must be found even with the most conscientious efforts. Many questions may arise which cannot be solved by computation and which may require the exercise of a high degree of sagacity. A wide discretion must of necessity be exercised by the commissioners. Doubtless some apparent inequalities, not amounting to a gross disparity, might be ex-

plained by reference to the complexities arising from town and ward lines and the different numbers of legal voters found in each. Not every deviation from exact uniformity in the ratio between legal voters and representatives would justify resort to the courts or warrant the conclusion that the Constitution had been ignored. The court would be slow to set aside an apportionment which appeared by any exercise of sound discretion to have followed the requirements of the Constitution and to be an approximation to equality. But where it is manifest on its face from a mere inspection of the apportionment that the Constitution has been transgressed, then the division made by the commissioners cannot stand. When fair minded men from an examination of the apportionment and division can entertain no reasonable doubt that there is a grave, unnecessary and unreasonable inequality between different districts, the Constitution has been violated and it is the duty of the court so to declare. *Baird* v. *Supervisors of Kings County,* 138 N. Y. 95, 114.

Tried by this test there can be no uncertainty in the result to be reached in the case at bar. The inequality is obvious and indisputable. It is momentous, excessive and might have been avoided. No argument is needed. It is demonstrated by a statement of the facts. The unit of representation or ratio of legal voters to representatives in Suffolk County obtained by dividing its 175,890 legal voters by the 54 representatives is 3,257$\frac{2}{9}$, and may be regarded for convenience as 3,258. Where a less number are given one representative the inequality increases their voting power, and where a larger number are given one representative the inequality diminishes their voting power in the House of Representatives. The commissioners divided Boston (which is by far the largest part of Suffolk County) into representative districts by adopting as such districts the several wards, except that they combined wards 19 and 21 into one district. Therefore no such complexity arises as might exist in the combination of towns or of towns with one or more wards of a city. The most glaring inequality is between District 26, with 3,913 legal voters, to which two representatives are given, or one for 1,957 voters, and District 16, with 6,182 legal voters, to which one representative is given. A voter in District 26 thus would have more than three times the voting power of a voter in District 16

in the election of representatives to the General Court. The variation from the unit of legal voters for one representative as found above is from 1,301 below in District 26 to 2,924 above in District 16. The disparity between the two is more than three to one. Any attempt to conform to the equality of representation required by the Constitution as to these two districts would have reversed the apportionment and given two representatives to District 16 and one to District 26. Districts 24 and 25 contain respectively 4,842 and 4,282 voters, and each is given one representative, while Districts 9 and 10, containing respectively 6,151 and 6,056 voters, are each given three representatives, being one representative to 2,051 and 2,018 voters respectively, or a disparity of more than two to one in each instance. Districts 14, 17, 18, 20 and 22, with voters varying from 6,105 to 5,666, but no one of them equalling in number the voters of District 16, are each given two representatives, a disparity of more than two to one as compared with District 16, which is given only one representative. The two largest districts, 7 and 19, containing respectively 10,714 and 11,571 voters, are given two representatives each, while Districts 5, 9 and 10 each considerably smaller and containing respectively 7,946, 6,151 and 6,056, each are given three representatives. Three representatives to each of the two largest districts would have given in the smaller of the two one representative to 3,571 legal voters or 313 more than the unit, while in the largest of those to which three have been given there is one representative for only 2,649 or 611 less than the unit, and in the smallest of those to which three have been given there is one representative for 2,019 voters or 1,239 below the unit of representation. Plainly any effort at an approximation to equality would have given three representatives to each of the two largest districts. District 6, with 8,618 voters is given two representatives while, as just pointed out, three districts with a less number of voters are given three representatives. Three representatives to District 6 would have been one for 2,873 voters or only 385 below the unit, a very appreciably less number below the unit than appears in Districts 3, 4, 5, 9, 10, 20, 22 and 26. Three representatives have been assigned to District 9 and also to District 10. But the population of each, being 6,151 and 6,056 respectively shows that, if given two representatives, they still would have a

larger representation according to legal voters than the correct ratio.

These references to the report of the commissioners show such numerous and flagrant deviations from equality of representation that it is impossible to reconcile the apportionment with the constitutional requirement. The inequality is gross and palpable and extends to a considerable number of districts. Even a cursory examination of the report would show that a far more equal apportionment might have been made by following the plain mandate of the Constitution.

The conclusion is irresistible that the constitutional requirement of equality has been ignored. It is not open to reasonable controversy. Tried by the standard of equality of representation fixed by the Constitution, the result reached by the commissioners appears arbitrary. It has been urged that the commissioners have been hampered by ward lines. But they are not responsible for the ward lines. These have been established by independent authority and the commissioners must accept them as they find them. *Fitzgerald* v. *Mayor of Boston*, 220 Mass. 503. They must make a determination of the nearest practicable approach to equality of representation on the existing ward lines. The report of the commissioners, being plainly not conformable to the Constitution, has no validity.

It has been argued ably in behalf of the commissioners that the grave results which will flow from declaring the report null and void should cause hesitation in sustaining the petitioners' contentions. These considerations may be entitled to weight in determining whether a constitutional mandate has been violated. But when once it has become evident beyond a doubt that the Constitution has been infringed and that rights indisputably secured by it have been trampled, then there is no other way but to maintain the Constitution when relief is promptly sought. No consequence of adherence to the Constitution can be so evil as a failure to abide by its terms under the circumstances here disclosed.

Mandamus affords the appropriate form of relief. It is the remedy to which resort usually is had to set aside the illegal performance of duty and to compel the performance of duty according to law, by public officers entrusted with discretionary,

administrative or political functions when it is their duty to act. *Flanders* v. *Roberts,* 182 Mass. 524, 529. *Cox* v. *Segee,* 206 Mass. 380. *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503, 505. *Attorney General* v. *Boston,* 123 Mass. 460, 479. *Rea* v. *Aldermen of Everett,* 217 Mass. 427. *Luce* v. *Board of Examiners of Dukes County,* 153 Mass. 108. *Keough* v. *Aldermen of Holyoke,* 156 Mass. 403. *Cheney* v. *Barker,* 198 Mass. 356, 367. *People* v. *Ammenwerth,* 197 N. Y. 340. It is a remedy expressly provided by St. 1913, c. 835, § 502, for the enforcement of the provisions of the very act, under § 390 of which these commissioners were elected and according to which they must perform their duties. It has been the remedy granted in most of the cases cited earlier in this opinion as to the jurisdiction of the court. It is available in proper cases to an individual who is a citizen and voter and thus interested in the execution of the laws. *Brewster* v. *Sherman,* 195 Mass. 222.

Where the public interests are involved, the Attorney General may institute a petition for mandamus to vindicate the public right. *Attorney General* v. *City Council of Lawrence,* 111 Mass. 90. *Attorney General* v. *Boston,* 123 Mass. 460, 478. *Wellington, petitioner,* 16 Pick. 87, 105. No discussion is needed to show that the composition of the House of Representatives, according to the requirement of the Constitution, is a matter of public concern.

The commissioners are still in office. By the express terms of § 390 of St. 1913, c. 835, "Said commissioners shall hold office for one year from the first Wednesday of January next after their election." These commissioners were elected in 1915. The report which they have already filed is a nullity. Therefore they have not performed their duty and are not *functi officio.* It is now their plain duty to make a division and apportionment according to the Constitution. They are amenable to the court to this end.

It has been urged that a special mandate be issued to the commissioners fixing a time within which a new and legal apportionment shall be filed. Doubtless the public exigency is great. The nomination and election of representatives to the Legislature from Suffolk County during the current year apparently can be accomplished only by the enactment of a special statute, for the time provided by the existing law for filing nomination papers expired before the present cases were entered in this court. St. 1913, c. 835, §§ 118, 120. A special statute to bring about this

result can be enacted only by a special session of the Legislature. But it cannot be doubted that the commissioners will proceed with all speed to the performance of their duties in the light of the rules here laid down. This must be presumed in their favor. They must at present be familiar with all the facts which will enable them forthwith to act in conformity to the Constitution and laws. No specific time need now be fixed for the completion of their work. It must be assumed that they will be actuated by a solemn consciousness of serious public duty, with all the obligations thereby entailed.

Since the several individual petitioners for writs of mandamus appear equally entitled to relief, and since only one order need be made, the remedy may be granted in the petition of the Attorney General for mandamus. Let the entry be in that cause in substance, that the division and apportionment of the county of Suffolk into representative districts already made and filed by the commissioners is void as not in conformity to the Constitution, and that the commissioners must proceed "as soon as may be" to divide the county of Suffolk into representative districts so as to apportion the number of representatives assigned to that county "equally, as nearly as may be, according to the relative number of legal voters" in the several districts, and otherwise in conformity to the Constitution and to art. 21 of the Amendments to the Constitution, and to make due report thereof as required by said article. Any party may apply for further direction and relief. In each of the other petitions for mandamus the entry may be, demurrer overruled and petition dismissed without prejudice for the reason that adequate relief is granted in the petition brought by the Attorney General. In the petitions for certiorari the entry may be, petitions dismissed. The bill in equity may be dismissed.

*So ordered.*

*W. A. Buie,* (*T. J. Ahern* with him,) for the commissioners.

*W. H. Hitchcock,* Assistant Attorney General, (*C. W. Mulcahy* with him,) for the Attorney General.

*N. Matthews,* (*F. G. Goodale* & *J. E. Searle* with him,) for the individual petitioners and the plaintiff in the suit in equity.