**REMMEY et al. v. SMITH, Secretary of Commonwealth of Pennsylvania, et al.**

**Civ. A. No. 12124.**

United States District Court
E. D. Pennsylvania.
Sept. 22, 1951.

Moore, Panfil & James, Philadelphia, Pa., for plaintiffs.

Robert E. Woodside, Robert M. Mountenay, Harrisburg, Pa., for defendants.

Before BIGGS, Circuit Judge, and BARD and CLARY, District Judges.

BIGGS, Circuit Judge.

■ The plaintiffs, citizens of the United States and of the Commonwealth of Pennsylvania, residents and registered voters of the City and County of Philadelphia, qualified to vote in the 17th Representative District and 8th Senatorial District thereof for Members of the General Assembly of the Commonwealth of Pennsylvania, have sued the Secretary of the Commonwealth and the duly elected Members of the 1951 General Assembly of the Commonwealth. The plaintiffs seek, among other things, to have this court declare unconstitutional the Pennsylvania statutes of May 10, 1921, P.L. 449 and P.L. 455, as amended, 25 P.S.Pa. § 2201 et seq.[1] referred to hereinafter as the "Apportionment Act of 1921", to compel the Members of the General Assembly to pass a new apportionment act which will reflect population changes in the Commonwealth, and to enjoin the Secretary of the Commonwealth from performing the functions mandatorily imposed upon him in connection with holding of elections for Members of the General Assembly until a prop-

---

1. Though the plaintiffs refer only to P.L. 449 and P.L. 455, in their Complaint, we assume for the purposes of this opinion, that they seek to have not only the specific statutes, to which they have referred, declared unconstitutional but also the Acts amendatory or supplemental thereto. The pertinent statutes are: Act of May 10, 1921, P.L. 449, as amend-

ed by Act of April 26, 1923, P.L. 106, No. 80, Act of May 10, 1921, P.L. 455, as amended by Act of April 26, 1923, P.L. 98, Act of May 8, 1923, P.L. 172, Act of May 15, 1923, P.L. 206, Act of June 29, 1923, P.L. 942, and Act of April 30, 1929, P.L. 877, Purdon's Pa.Stat.Ann. Tit. 25, § 2201 et seq.

er and adequate apportionment law has been passed.[2]

The Complaint alleges that under the present Constitution of Pennsylvania, that of 1874, P.S.Const., after each decennial United States census has been completed the General Assembly of Pennsylvania is required immediately to apportion the Commonwealth into representative and senatorial districts; [3] that the 1950 United States decennial census has been completed; that the representation of the plaintiffs in the General Assembly has become grossly disproportionate; that for the last two decades, viz., from 1931 until the date of the filing of the instant Complaint on April 11, 1951 that disproportion has grown so great that they and their fellow citizens in the wards and districts of Philadelphia designated have in effect been deprived of suffrage. The plaintiffs cite figures which show that in the Ninth Representative District (population 8,767), a vote cast for a representative is over a score of times more effective than a vote cast in the Seventeenth Representative District (population 257,373) where the plaintiffs reside. The Complaint also asserts that since 1931, at every regular session of the General Assembly, attempts have been made to compel that body to reapportion the state senatorial and representative districts in accordance with the Constitution of Pennsylvania and that these efforts have met with no success,[4] that since the beginning of the 1951 regular session of the General Assembly of the Commonwealth of Pennsylvania, despite the fact that both major political parties publicly pledged themselves to reapportionment, no bill relating to reapportionment has passed either House.

The Complaint also points out that Article VII, Section 1, of the Constitution of the Commonwealth of Pennsylvania requires Senators and Representatives of the General Assembly of the Commonwealth to make oath that they will discharge the duties of their office with fidelity and provides also that any individual who shall be convicted of violation of this oath shall be deemed guilty of perjury and shall be disqualified forever from holding any office of trust or profit within the Commonwealth.

The plaintiffs assert that they have been deprived of constitutional rights guaranteed to them by the Fourteenth Amendment to the Constitution of the United States, and freedom of elections as guaranteed by Article I, Section 5,[5] of the Constitution of the Commonwealth of Pennsylvania and that their right to vote as guaranteed by Article VIII, Section 1,[6] of the Constitution of Pennsylvania has been "decimated".

A motion to dismiss has been filed by all the defendants based on the ground, among others, that this court is without jurisdiction or the power to adjudicate the controversy because the subject matter of the suit lies within the ambit of the powers peculiarly reserved to the States under the Constitution of the United States.

We have set out the allegations of the complaint at such length because we think that the plaintiffs are entitled to have their case stated fully. Without receiving

2. Since the suit is one to declare a state statute unconstitutional a three-judge district court was convened pursuant to Sections 2281 and 2284, Title 28, U.S.C.

3. See the Constitution of Pennsylvania, Article 2, Section 18 which provides: "The General Assembly * * * *immediately* after each United States decennial census, shall apportion the State into senatorial and representative districts * * * *". (Emphasis added.)

4. In a leading article in the University of Pittsburgh Law Review, Vol. 12, No. 2, p. 230, it is stated that since 1921, 52 bills dealing with the problem of apportionment have been introduced in the General Assembly. See also the "Chronology of Legislative Attempts to Change Apportionment Legislation Now in Force", an appendix to the article referred to.

5. Article I, Section 5, provides in pertinent part: "Elections shall be free and equal * * *."

6. Article VIII, Section 1, of the Constitution of Pennsylvania, in pertinent part, provides: "Every citizen twenty-one years of age (possessing qualifications as designated) * * * shall be entitled to vote at all elections, subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact."

evidence or making specific findings of fact we are aware, as is almost everyone in Philadelphia, that what the plaintiffs assert in their complaint is notoriously true. The practical disenfranchisement of qualified electors in certain of the election districts in Philadelphia County is a matter of common knowledge. The last effective Apportionment Act of Pennsylvania, that which the plaintiffs are seeking now to have declared unconstitutional, is the act of 1921. See note 1, supra. Two Apportionment Acts were passed by the General Assembly in 1937, Acts of June 30, 1937, P.L. 2454 and P.L. 2443,[7] but these were declared unconstitutional by the Court of Common Pleas of Dauphin County. See Shoemaker v. Com. ex rel. Lawrence, 45 Dauph. Co. Rep.,Pa., 111, and Lyme v. Lawrence, 45 Dauph.Co.Rep., Pa., 322. No general Apportionment Act has been passed by the General Assembly since that of 1937. As we have said, the Constitution of the Commonwealth provides that "Elections shall be free and equal * * *" and to achieve this end the Constitution itself contains provisions for the apportionment for the election of Senators[8] and Representatives,[9] and for the times and periods when such apportionments shall be made.[10]

The blunt fact is that past General Assemblies of Pennsylvania have been derelict in the duty specifically imposed on them by the Constitution of Pennsylvania in failing to pass reapportionment acts as required by the express mandate of the Pennsylvania Constitution. That they have failed to do so must·be deemed to be all the more extraordinary in the temper of this time and age when so much emphasis has been placed upon the representative form of government and upon the democratic process. The remedy of the substantially disenfranchised elector, however, lies, at least primarily, in the General Assembly and in the Courts of Pennsylvania.

Even when the selection of the Representatives in the national Congress has been the subject of the litigation and a State has failed to adopt a mode of selection of Representatives in accord with federal reapportionment acts, the Supreme Court of the United States has held that the issue presented is one "of a peculiarly political nature and therefore not meet for judicial determination", and that the courts of equity, at least those of the federal system, should not enter this field. See Colegrove v. Green, 328 U.S. 549, 552, 66 S.Ct. 1198, 1199, 90 L.Ed. 1432. Action by this court is therefore, circumscribed.[11] See South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834; MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3; and Wood v. Broom, 287 U.S. 1, 8, 53 S.Ct. 1, 77 L.Ed. 131. Cf. Snowden v. Hughes, 321 U.S. 1, 64 S. Ct. 397, 88 L.Ed. 497 and Koenig v. Flynn, 285 U.S. 375, 52 S.Ct. 403, 76 L.Ed. 805. A fortiori if a court of the United States should not compel a State Legislature to effect a reapportionment relative to the national representative elective system, it should not do so in respect to an apportionment system whereby Representatives in States legislatures are to be chosen. An action such as that at bar may strike at the very heart of our dual system of government under which the United States and the States must remain sovereign in their spheres. But a suit based on the Third

---

7. See P.S.Pa.Ann., Tit. 25, § 2201 et seq.

8. Constitution of Pennsylvania, Article II, § 16.

9. Id. § 17.

10. Id. § 18.

11. The question of jurisdiction in cases involving selections of Representatives in Congress has not as yet, in our opinion, been adjudicated by the Supreme Court. In Colegrove v. Green, 328 U.S. 549, 552, 553, 556, 66 S.Ct. 1198, 1199, 90 L.Ed. 1432. Mr. Justice Frankfurter said that these "demands on judicial power * * * cannot be met by verbal fencing about 'jurisdiction.'", and that "At best * * * (the Supreme Court) could only declare the existing electoral system invalid.", and that the "Constitution has many demands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action.". The language employed would seem to indicate that the questions presented relate to the exercise of judicial power rather than to the possession of the power to adjudicate.

Civil Rights Act, 17 Stat. 13, 8 U.S.C.A. § 43, as well upon the Fourteenth Amendment, may present novel questions, not as yet decided. We do not reach them at this time for the reason hereinafter stated.

■ The determination which the plaintiffs would have us make lies in that extremely sensitive field, the relation of the powers of the National Government to those of the States. Here, of all places, a federal court should tread warily and with great circumspection and should forego any action where relief may be furnished by the State. This court should not intervene where an apparent, but untried, remedy may lie in the Courts of the Commonwealth of Pennsylvania. Those Courts may declare the present operation of the Apportionment Act of 1921 to be unconstitutional under the Pennsylvania Constitution. Cf. Shoemaker v. Commissioner ex rel. Lawrence and Lyme v. Lawrence, supra; Commonwealth ex rel. Biddle v. Crow, 218 Pa. 234, 67 A. 355; Attorney General v. Suffolk County Apportionment Commissioners, 224 Mass. 598, 113 N.E. 581, and State ex rel. Attorney General v. Cunningham, 81 Wis. 440, 51 N.W. 724, 15 L.R.A. 561. Moreover, and this we deem to be a most cogent circumstance, the 1951 General Assembly of the Commonwealth of Pennsylvania is in session. This is the first General Assembly convened following the United States decennial census of 1950. The 1951 General Assembly has the opportunity to act in respect to this most important matter and, if it does, may pass a reapportionment act which will meet every constitutional requirement. Under these circumstances action by this court at this time would, at best, be premature.

Expressly we do not pass upon the question of our jurisdiction to adjudicate the questions presented. Deeming the instant suit to be prematurely brought, we will dismiss it for want of equity.

BARD, District Judge.

I concur that the suit should be dismissed.

The opinion of Chief Judge Biggs would dismiss this suit as premature on the grounds that plaintiffs failed to exhaust their state remedies and that the 1951 Pennsylvania General Assembly may pass a new apportionment act. I agree. But there are additional reasons warranting dismissal that should be stated at this time so that plaintiffs are not misled into believing they can return to this Court and obtain relief at some future date.

The Civil Rights Acts, upon which this suit is based, provide redress for violations of federal rights. The crucial question is what *federal* right is violated by the Pennsylvania legislature's failure to reapportion the *state* legislative districts every ten years in accordance with the *state* constitution.

The free and untrammeled right or privilege of suffrage is not given by any Articles of or Amendments to the Federal Constitution. The Constitution guarantees a republican form of government only to the extent that the citizens of the various states are to select their own form of government, as they did in the original thirteen states, and to the extent that the states are duty bound to provide a government "by the people". This, however, is the full limit of national control of state affairs, and the state assumes absolute control thereafter. U.S.Const. Art. IV, § 4; Minor v. Happersett, 21 Wall. 162, 170–176, 22 L.Ed. 627; Keogh v. Neely, 7 Cir., 50 F.2d 685.

The Fourteenth Amendment did not add any right to vote; it only guaranteed additional protection to the rights and privileges a citizen already had. Minor v. Happersett, supra.

Appropriate here are the words of Mr. Justice Peckham in Pope v. Williams, 193 U.S. 621, at page 632, 24 S.Ct. 573, 575, 48 L.Ed. 817: "The privilege to vote in any state is not given by the Federal Constitution, or by any of its amendments. It is not a privilege springing from citizenship of the United States. Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627. It may not be refused on account of race, color or previous condition of servitude, but it does not follow from mere citizenship of the United States. *In other words, the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state*

*may direct, and upon such terms as to it may seem proper,* provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution." (Emphasis added.)

What types of discrimination in state elections are forbidden by federal law? Section 1 of the Fifteenth Amendment and Section 31 of Title 8, U.S.C.A. prohibit discrimination on the ground of race, color or previous condition of servitude. The Nineteenth Amendment bans discrimination on account of sex[1]. To interpolate into these provisions the right that an individual's vote in an election for state offices should not be diluted by unequal apportionment but should be equal in weight to each other vote cast in the state would be legislative action by judicial pronouncement.

Accordingly, I cannot find the necessary violation of a federal right, and would dismiss this action for this reason.

Plaintiffs have great merit in their cause. It is all too true that the state legislators sworn to uphold the Constitution have been flagrant in their violation of the Pennsylvania Constitutional mandate to re-apportion the state every ten years, and that the present apportionment system is a gross example of gerrymandering at its worst. The legislative history of recent decades and the protracted and dilatory tactics of the current legislative session indicate that the state legislators will probably continue to be inexcusably derelict in this important matter. But plaintiffs' remedy lies in the state courts because a state right, not a federal right, is being violated.

1. Section 2 of the Fourteenth Amendment reduces proportionately a state's representation in Congress if the right of male inhabitants to vote for members of the state legislature is denied or abridged in any way. But, as was pointed out in Chief Judge Biggs' opinion, this has been determined by the United States Supreme Court in recent opinions to be a "political question" and not a "justicible issue". In addition to the cases cited in Chief Judge Biggs' opinion, see also Saunders v. Wilkins, 4 Cir., 152 F.2d 235.