**Mary Jo PERRY, Plaintiff,**

v.

**James E. FOLSOM et al., Defendants.**

**Civ. A. No. 8460.**

United States District Court
N. D. Alabama, S. D.

Oct. 3, 1956.

J. L. Kerr and Kenneth R. Cain, Sr., (of Kerr & Cain), Alabama City, Ala., for plaintiff.

John Patterson, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., for defendants.

GROOMS, District Judge.

Plaintiff, a citizen of Etowah County, Alabama, brings this action against the Governor, the Lieutenant Governor, the Secretary of State,[1] and the members of the Legislature of the State of Alabama, averring that she has been deprived of due process of law, of equal protection of the laws, and of equality of representation under the Laws and Constitutions of the United States and of the State of Alabama, in that the Legislature of the State of Alabama has failed and refused to comply with §§ 197, 198; 199 and 200 of Article IX of the Constitution of the State of Alabama of 1901. These sections provide for the reapportionment of membership of the Legislature of the State of Alabama every ten years following each decennial census. Plaintiff prays for an order directing defendants to comply with these constitutional provisions. Though not specifically averred, plaintiff insists that the defendants have also violated the provisions of the Civil Rights statutes. 42 U.S.C.A. §§ 1983 and 1988.

---

1. The place of the Governor, the Lieutenant Governor and the Secretary of the State in this litigation does not appear from the complaint.

In brief and by way of illustration, plaintiff sets out the comparative value of her vote with that of other citizens of this State as follows:

One vote in Hale County is approximately equal to

4½ votes in Etowah County

4½ votes in Tuscaloosa County

7¾ votes in Mobile County

One vote in Bullock County is approximately equal to

6 votes in Etowah County

6 votes in Tuscaloosa County

9½ votes in Mobile County

One vote in Perry County is approximately equal to

4½ votes in Etowah County

4½ votes in Tuscaloosa County

7¾ votes in Mobile County

One vote in Sumter County is approximately equal to

3¾ votes in Etowah County

3¾ votes in Tuscaloosa County

6½ votes in Mobile County.

Numerous motions to dismiss have been filed. They challenge the jurisdiction of the court and assert that the complaint does not state a claim upon which relief can be granted.

The parties have cited a number of decisions to sustain their respective positions. Plaintiff's chief reliance is upon Dyer v. Kazuhisa Abe, D.C.Hawaii, 138 F.Supp. 220. The defendants rely primarily upon Remmey v. Smith, D.C.E.D. Pa., 102 F.Supp. 708, and Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L. Ed. 1432. The latter case was an action by citizens of the State of Illinois to secure a declaratory decree against the defendants, who, as officials of the State of Illinois, were charged with the responsibility of preparing ballots and conducting elections in that State, including the election of Congressmen. The Legislature of the State of Illinois not only failed to re-

district the state according to population after the 1940 census but it had failed to do so for more than 40 years. A three-judge court dismissed the suit upon the authority of Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131.[2] The Supreme Court affirmed, saying [328 U.S. 549, 66 S.Ct. 1199]:

"We are of opinion that the petitioners ask of this Court what is beyond its competence to grant. This is one of those demands on judicial power which cannot be met by verbal fencing about 'jurisdiction.' It must be resolved by considerations on the basis of which this Court, from time to time, has refused to intervene in controversies. It has refused to do so because due regard for the effective working of our Government revealed this issue to be of a peculiarly political nature and therefore not meet for judicial determination. * * *

"To sustain this action would cut very deep into the very being of Congress. Courts ought not to enter this political thicket. The remedy for unfairness in districting is to secure State legislatures that will apportion properly, or to invoke the ample powers of Congress. * * *"

Justice Black, dissenting, noted that the appellants lived in a congressional election districts, the representative populations of which ranged from 612,000 to 914,000, that 20 other congressional districts had populations that ranged from 112,116 to 385,207, and that in seven of these districts the population was below 200,000.

In the Dyer case the Court denied a motion to dismiss a bill seeking a reapportionment directed by the Hawaiian Organic Act, 48 U.S.C.A. § 562. In a well-reasoned opinion, amply buttressed by authority, the Court pointed out that the action before it was to be distinguished from that presented in Cole-

2. Wherein similar relief was sought in the Southern District of Mississippi and in- volving a legislative act redistricting that State. 1 F.Supp. 134.

grove v. Green, saying [138 F.Supp. 234]:

> "The reasons preventing the Supreme Court from acting in Colegrove v. Green are not present here. The Territory of Hawaii does not have the same relation to this Court that the State of Illinois has to a federal court within its boundaries. Hawaii is a political subdivision of the United States. It has the same relation to Congress a city or county has to a state. The legislature of the Territory is similar to a county governing board. It has no sovereignty of its own.

> "This relationship is the distinguishing factor between Colegrove v. Green and the suit before us. * * * *"

Remmey v. Smith, D.C., 102 F.Supp. 708, 711, was an action by residents and registered voters of the City and County of Philadelphia, qualified to vote in the 17th Representative District and the 8th Senatorial District for members of the General Assembly of the Commonwealth of Pennsylvania against the Secretary of the Commonwealth and the members of the 1951 General Assembly. Plaintiffs sought to have the Court declare unconstitutional the apportionment Act of 1921, to compel the members of the General Assembly to pass a new apportionment act which would reflect the population changes, and to enjoin the Secretary from performing the functions imposed upon him in connection with holding of elections for members of the General Assembly until a proper and adequate apportionment law was passed. Plaintiffs cited figures to show that the 17th Representative District had a population of 257,373, whereas the 9th District had a population of 8,767. Following Wood v. Broom and Colegrove v. Green, the three-judge court, speaking through Circuit Judge Biggs, held that the action was premature in view of the fact that the 1951 General Assembly was the first to be convened after the decennial census of 1950 and still had an opportunity to act in respect to the matter. Judge Bard concurred, stating that there were additional reasons warranting dismissal "that should be stated at this time so that the plaintiffs are not misled in believing they can return to this Court and obtain relief at some future date." After pointing to these reasons he concluded that the remedy lay in the State court and that no federal rights was being violated. Very pertinently the Court observed:

> "A fortiori if a court of the United States should not compel a State Legislature to effect a reapportionment relative to the national representative elective system, it should not do so in respect to an apportionment system whereby Representatives in States legislatures are to be chosen. * * * *"

In Opinion of the Justices, 263 Ala. 153, 81 So.2d 697, 698, the Supreme Court of Alabama, quoting Sections 199 and 200, stated that "the duty of apportioning representation in the legislature is thus made to rest *exclusively* with the legislature itself."

Although not referred to in the briefs submitted, the Court is of the opinion that the case of South v. Peters, D.C.N.D. Ga., 89 F.Supp. 672, involving the County Unit System of Georgia, is of persuasive authority adverse to plaintiff's claim. The Supreme Court, in affirming [3] the action of the lower court in dismissing the petition, declared:

> "Federal courts consistently refuse to exercise their equity powers in cases posing political issues arising from a state's geographical distribution of electoral strength among its political subdivisions. See MacDougall v. Green, 1948, 335 U.S. 281, 69 S.Ct. 1 [93 L.Ed. 3]; Colegrove v. Green, 1946, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432; Wood v. Broom, 1932, 287 U.S. 1, 8, 53 S.Ct. 1, 3, 77 L.Ed. 131; cf. Johnson v.

---

3.  339 U.S. 276, 70 S.Ct. 641, 642, 94 L.Ed. 834.

Stevenson, 5 Cir., 1948, 170 F.2d 108."

This Court realizes that exact equality in apportionment cannot be attained. At the same time the Court is acutely aware from judicial knowledge of the fact that the Legislature of Alabama has consistently failed to make any legislative apportionment whatever in compliance with the Constitutional provisions referred to.

The determination here sought involves the relation of the powers of the National Government to those of the States. The issue presented is of a political nature. Under such circumstances, a federal court should proceed with the greatest possible caution. Ours is a dual system of government. The United States is sovereign in its sphere and the States are likewise sovereign in their spheres. Enroachments one upon the other should be studiously avoided and can but lead to unseemly disputes. If the federal courts attempt to exercise the sovereignty vested in the States, as plaintiff here seeks, state sovereignty will suffer serious if not fatal impairment. State sovereignty is not a will-of-the-wisp. It is not a mere abstraction, or untested theory. It is tangible, concrete and real. It is a living principle that marked a new concept of government. It is inherent, it is explicit; and it is basic in our legal fabric. It is to be honored by what it has wrought and treasured for what it is. When our fathers founded these States and established this Union, it was one of the corner posts in the constitutional barriers which they erected to shield their newly won rights from the tyranny of the all-powerful state. No federal court should remove or mar these ancient landmarks, "which they of old times have set in thine inheritance." Under the compulsion of the principles stated in the authorities referred to, this Court declines to do so. The Court is, therefore, of the opinion that the several motions to dismiss are well taken and should be granted and that the bill should be dismissed.