**UNITED STATES of America,**
**Plaintiff,**

v.

**DALLAS COUNTY, James G. Clarke, Jr., Sheriff of Dallas County, Alabama, Blanchard McLeod, Circuit Solicitor of the Fourth Judicial District of Alabama, Defendants.**

**Civ. A. No. 3064-63.**

United States District Court
S. D. Alabama, N. D.

March 19, 1964.

Burke Marshall, Asst. Atty. Gen., Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., John Doar, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Richmond M. Flowers, Atty. Gen. of Alabama, Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., Thomas G. Gayle, W. McLean Pitts, Selma, Ala., for defendants.

THOMAS, District Judge.

This suit is brought under authority of Title 42 U.S.C. § 1971(a), (b) and (c) against Dallas County, Alabama, and the above-named officials. The complaint prays that this Court issue a preliminary and permanent injunction enjoining the defendants, their agents, servants, employees and all persons in active concert or participation with them from:

(a) Intimidating, threatening, coercing, or attempting to intimidate, threaten, or coerce any person for the purpose of interfering with the right of that person or any other person to become registered to vote and vote in Dallas County, Alabama, for candidates for federal office, or punishing any person for having registered or attempted to register to vote and vote for any such candidate;

(b) Striking, threatening to strike, arresting, threatening to arrest, holding in custody, prosecuting or attempting to prosecute any person in the Courts of the State

of Alabama for the purpose of interfering with the right of any Negro citizen to become registered or to vote in Dallas County and to vote for candidates for federal office, or for punishment for having previously registered or voted, or engaging in any act or practice which would deprive any Negro citizen of Dallas County, Alabama, of any such right or privilege;

(c) Proceeding with the prosecution, failing to return the bond monies or release the sureties on the bond in connection with the prosecution of Bosie Reese in the courts of the State of Alabama on the charges for which he was arrested on June 17, 1963.

The matter was first brought before this Court on a petition for an ex parte restraining order, covering relief sought in (c) above and filed with this Court in Mobile *on June 26, 1963, at 5:25 p. m.*, which application this Court denied. That action was reviewed by the Fifth Circuit Court of Appeals *on the same evening at 9:00 p. m., in Montgomery, Alabama*, and upheld on June 27, 1963. In brief, counsel for defendants state that at that hearing, the Fifth Circuit Court of Appeals pointed out that this case was distinguishable in several respects from that of United States v. Wood, 295 F.2d 772 (1961), on which plaintiff's counsel at that time relied.

The cause was set for hearing at Selma, Alabama, on July 25, 1963, on plaintiff's motion for a preliminary injunction covering relief sought in paragraphs (a), (b), and (c) above. Motions of defendants to dismiss were heard at the same time. Evidence was introduced by the Government as well as by the defendants. As the Court was unable to devote more than one day to the hearing at that particular time, the case was recessed in order to give the Government an opportunity to cross-examine the affiants who had testified in affidavit form for the defendants; and also in order that the Government might introduce rebuttal testimony.

The hearing was duly set to be reconvened on October 3, 1963. However, due to a condition of unrest then existing in Selma and Dallas County generally, the Court by order dated September 30, 1963, good cause appearing therefor, continued the October 3rd hearing for resetting at a later date. Counsel for the Government, deciding that the Court had abused its discretion, on the 8th of October 1963, filed a petition for writ of mandamus to the Fifth Circuit Court of Appeals. This petition was subsequently dismissed as moot, at the request of the Government, inasmuch as at the time of the service of the notice of mandamus on the District Court, the Court had already made its plans to re-set the hearing in Selma for October 15, 1963.

At the conclusion of the hearing on that date, the Government moved for a dismissal as to the defendant Henry Reese on the ground that there was no evidence against him. Counsel for the Government should have made a similar motion as to each of the other defendants, but did not see fit to do so. After careful consideration of the evidence, the Court finds no evidence against any of these defendants to justify or even to suggest that they should be enjoined.

The Government bases its request for an injunction on five allegedly wrongful acts committed by the defendants and/or their agents. These five acts are as follows:

1. Attendance of the Sheriff and the Prosecuting Attorney and their agents at a mass meeting held in Selma on May 14, 1963.

2. The same acts at a mass meeting held in Selma, June 17, 1963.

3. The arrest by Sheriff Clarke of Bosie Reese on the afternoon of June 17, 1963.

4. The arrest of Bernard Lafayette on June 18, 1963.

5. The arrest of Alexander L. Love, alias Brown, on July 22, 1963.

As to the mass meeting on May 14, 1963, the Sheriff and others testified that there was a general feeling of unrest in Selma about that time; and learning of the proposed mass meeting, he felt it his duty as principal law enforcement officer of the county to be in attendance at the meeting. He and some of his deputies accordingly attended the meeting. No arrests were made, no demonstrations took place, several cars containing white men and bearing license tags from counties other than Dallas were turned away from the immediate vicinity of the meeting.

As to the mass meeting of June 17, 1963, the Sheriff's participation was subtantially the same as that of the meeting of May 14, 1963.

The evaluation of a set of facts by one individual might not comport with the evaluation of the same facts made by another. The correct evaluation may best be made by one who has lived in and is familiar with the environment wherein the evaluation is to be made. The proper evaluation of a situation involving the clash of divergent ideas in the process of being resolved according to relatively recent judicial pronouncements necessitates sound, thorough and temperate thinking. In order to evaluate properly Sheriff Clarke's action, some knowledge of the problems with which he was confronted is necessary. Dallas County is a rural county in southwest Alabama; and as shown by the complaint, its population is almost evenly divided between white and colored, there being few more colored than white.

Unfortunately, for a number of months there has been much social unrest in Alabama, and, indeed, in the entire United States. Situations have developed in all sections of the country which have required thoughtful handling, else chaos would have broken out. Indeed, in many instances, due to improper handling, chaos has been the unhappy result. Had Sheriff Clarke not taken cognizance of advance information as to the holding of these meetings, he would have been derelict in his duty. Having had notice of the meetings, if his office had not been represented at these meetings, he would have been even more derelict. As is shown by much of the testimony, many of those in attendance felt that the presence of the Sheriff and his deputies was conducive to good order. It will never be known, as some things (especially what might have happened) are incapable of absolute proof, but the Court is of the opinion that the re-routing by the Sheriff of the out-of-county cars away from the vicinity of these meetings was perhaps the difference between order and disorder.

As to the arrest of Bosie Reese on the afternoon of June 17, 1963, there was testimony that a number of people were in line in the hall of the Dallas County Courthouse, waiting to register to vote. Reese was in close proximity to the voter registration line, having with him a note pad and camera. His purpose in being there was to obtain the names and addresses of Negroes who registered, and to take pictures of such persons. In order to obtain such information, he approached the individuals in line, requesting their names and addresses. Some furnished this information, and there was testimony that some emphatically refused.

Sheriff Clarke, in his capacity as Sheriff of Dallas County, is charged with maintaining order in the Dallas County Courthouse, as well as throughout Dallas County generally. At various times during the course of any year there are lines of people in the hall of the courthouse for various purposes, such as lines formed to purchase automobile tags. Such lines are necessitated by the positioning of windows along the hall, through which windows business is transacted by the various offices in the courthouse—such as the sale of automobile tags through a window in the office of the Judge of Probate. These lines, varying in length from time to time, depending on their purpose, certainly present a problem of control, and this problem is a responsibility of the office of the

Sheriff. Since control of these various lines and the maintenance of order fall within the responsibility of the Sheriff, certainly it is within his discretion to devise methods and establish rules, within reasonable limits, of executing his duty. As such, a deputy sheriff is made available to observe these lines, and a rule has been established that no person will be allowed to molest any line within the courthouse. This has been an unwritten rule of longstanding and there can certainly be no serious contention that such rule should have been in writing and posted.

Reese was in fact molesting the voter registration line in that he was requesting information of persons therein, some of whom refused to divulge such information. Sheriff Clarke, well within the authority conferred upon him as Sheriff, informed Reese that he was loitering and would have to leave, and ordered him to do so. Reese apparently left; but very shortly thereafter, he was again seen by Sheriff Clarke in the hall of the courthouse. Sheriff Clarke testified that at that time he arrested Reese for failing to obey the lawful order of an officer. Reese was charged with and tried on charges of resisting a lawful arrest and for conduct calculated to provoke a breach of the peace in the hallway of the Dallas County Courthouse, Selma, Alabama. Reese was convicted on both counts, following a refusal by the United States District Court for the Southern District of Alabama, affirmed by the United States Court of Appeals for the Fifth Circuit, to enter a temporary restraining order enjoining the prosecution of Reese. There is a presumption that Reese was afforded a fair trial in the Dallas County Court and that the evidence warranted the aforesaid arrest and subsequent conviction.

As to the arrest of Bernard Lafayette, Jr., he was arrested on the afternoon of June 18, 1963, on a warrant issued on the affidavit of Sheriff Clarke, charging the offense of vagrancy. Vagrancy is defined, and various persons are described as vagrants, in Title 14, Sec. 437, Code of Alabama (Recomp.1958). Among those described as vagrants are persons leading an idle life, who have no property sufficient for their support, and who are able to work and do not in fact work. Another is any able-bodied person who is found begging.

Sheriff Clarke testified that he had reports from his deputies and from other individuals, informers, that Bernard Lafayette had been begging. On such information, Sheriff Clarke executed an affidavit which formed the basis for the warrant on which Lafayette was arrested. Subsequent to Lafayette's arrest, and before trial, inquiries of Sheriff Clarke failed to produce any evidence that Lafayete was gainfully employed.

Lafayette was tried on the charge of vagrancy, June 20, 1963, in the Dallas County Court, Selma, Dallas County, Alabama. The prosecution, in the opinion of the trial court, made out a prima facie case of vagrancy, which was then averted by the defendant on a showing that Lafayette was in fact gainfully employed by the Student Non-Violent Coordinating Committee, with headquarters in Atlanta, Georgia. Blanchard McLeod, prosecutor, a defendant in the instant case, agreed with the Court that the defendant Lafayette had averted the state's prima facie case. Lafayette was found not guilty.

Sheriff Clarke's affidavit, on which the warrant for Lafayette's arrest was issued, was based on probable cause for believing and belief. It is the opinion of the Court that Sheriff Clarke did in fact have probable cause for believing that Lafayette was a vagrant. So believing, it was his duty, in his capacity as Sheriff, to initiate such process as required to bring Lafayette before the court to be tried on a charge of vagrancy.

As to the arrest of Love, alias Brown, the testimony of both Sheriff Clarke and Love shows that Love was arrested while driving an automobile with one headlight, and at the time of said arrest had a driver's license in the name of Alexander Love, while at the same time he was going under the name of Alexander

**1018**

Brown, and in fact when asked by the Sheriff at the time of the arrest, gave his name as Brown. Sheriff Clarke testified that he did not know the identity of the driver of the automobile at the time it was stopped.

I have carefully examined and considered all the evidence introduced in this case, and am firmly of the opinion that no federal constitutional rights of those for whom the plaintiff sues have been violated in any way by the alleged actions of any one or all of the defendants.

As stated by Judge Grooms in the case of Perry v. Folsom et al., 144 F. Supp. 874, at page 877:

"The United States is sovereign in its sphere and the States are likewise sovereign in their spheres. Encroachments one upon the other should be studiously avoided and can but lead to unseemly disputes. If the federal courts attempt to exercise the sovereignty vested in the States, as plaintiff here seeks, state sovereignty will suffer serious if not fatal impairment. State sovereignty is not a will-of-the wisp. It is not a mere abstraction, or untested theory. It is tangible, concrete and real. It is a living principle that marked a new concept of government. It is inherent, it is explicit; and it is basic in our legal fabric. It is to be honored by what it has wrought and treasured for what it is. When our fathers founded these States and established this Union, it was one of the corner posts in the constitutional barriers which they erected to shield their newly won rights from the tyranny of the all-powerful state. No federal court should remove or mar these ancient landmarks, 'which they of old times have set in thine inheritance.' "

This court is of the opinion that the plaintiff has failed in its proof and the relief prayed for is therefore denied. A judgment in accordance herewith will be entered.