JORGE R. REYES and his wife TEÓFILA ERAZO REYES, ETC., Plaintiffs and Appellants, *v.* HEIRS OF GIL SÁNCHEZ SOTO, ETC., Defendants and Appellees.

No. R-67-241.     Decided January 30, 1970.

*Jorge Luis Ruiz Rivera, Faustino R. Aponte,* and *Arturo Aponte Parés* for appellants. *Félix Ochoteco, Jr., Luis R. Polo,* and *José C. Jusino* for appellees.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Appellants Jorge R. Reyes and his wife Teófila Erazo sued appellees who constitute the Heirs of Gil Sánchez Soto, for damages. In the complaint which was filed in the San Juan Part of the Superior Court it is alleged that appellant Teófila Erazo was born on January 8, 1908, issue of Gil Sánchez Soto's sexual relations; that appellant was considered as a daughter, by her father Gil Sánchez Soto as well as by his children Alejandro, Florencio, and María Sánchez Soto; that considered as such she was offered as part of her father's inheritance an equal part to that of the other heirs; that said offers of participation in the inheritance were made in order that appellant would lose her right to file an action of filiation claiming compulsory acknowledgment; that those actions were corroborated through letters written by her sister, defendant María Sánchez; that defendant Alejandro Sánchez has made statements to different persons affirming appellant's right to the inheritance but refusing her acknowledgment.

The complaint alleges also that appellant filed action of compulsory acknowledgment in the month of September 1965

and that the prescriptive term to file said action had elapsed, and that she was led by these actions of defendants, especially by defendant Alejandro Sánchez, not to exercise the right to which she was entitled to file a cause of action for her compulsory acknowledgment; that the fraudulent, unlawful, and deceitful actions consisted in oral and written statements made by Alejandro Sánchez and María Sánchez and other heirs, the defendants; that as a result of that unlawful, fraudulent, and deceitful conduct, appellant lost her right to a cause of action for compulsory acknowledgment since the same had prescribed; that said unlawful, fraudulent, deceitful and negligent actions caused her damages which she alleges in the amount of $500,000.

Against the foregoing complaint, defendants filed a motion to dismiss "because the same did not allege facts constituting cause of action in favor of plaintiffs and against defendants." The parties having been heard, the trial court granted defendants' motion to dismiss and as it understood that the complaint did not admit amendment, it rendered final judgment dismissing it for all legal effects. To review said judgment we issued the instant appeal.

The trial court was of the opinion that § 1802 of the Civil Code is not applicable to a situation of facts as that contained in the allegations of the complaint, on the ground that the trial court does not believe that the fault and negligence to which the cited section refers is applicable to defendants' conduct as alleged by plaintiff.

In *Boulon* v. *Pérez*, 70 P.R.R. 941 (1950), we said at page 946:

"According to the doctrinal writer Moore in his work, volume, section and page cited 'A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim. But a com-

plaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.' On the other hand, as stated by the Court of Appeals for the Fourth Circuit in *Tahir Erk* v. *Glenn L. Martin Co.*, 116 F.2d 865, 4 Fed. Rules Serv. 12*b*.34, case 1, p. 143, '. . . in weighing the validity of a motion to dismiss for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. Our duty, rather, is to consider whether in the light most favorable to the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim.' See also *Cohen* v. *United States*, 129 F.2d 733, 6 Fed. Rules Serv., case 1, p. 112 and *Leimer* v. *State Mutual Life Assurance Co.*, 108 F.2d 302, 2 Fed. Rules Serv., p. 86; cf. *National City Bank* v. *De la Torre*, 49 P.R.R. 548, and *Rossy* v. *Del Valle*, 45 P.R.R. 583."

■ We applied therein Rule 12 (b) (6) of the Rules of Civil Procedure of 1943, which allowed to request the dismissal of the complaint for *"dejar de exponer hechos constitutivos de una causa de acción."*▌ The equivalent to said rule in the Rules of Civil Procedure of 1958 is Rule 10.2 (5), "Failure to state a claim upon which relief can be granted." The text of the present Rule is even more favorable to a plaintiff, since the motion to dismiss is not to be considered only in the light of a certain cause of action but in the light of plaintiff's right to the *granting of a relief*, whichever it may be. In view thereof, the statements which we made in the *Boulon* case, particularly the one that a complaint should not be dismissed for insufficiency, unless it appears to a certainty that plaintiff is entitled to *no relief* under any state of facts which could be proved in support of the claim, have even more efficacy after the Rules of 1958. See: Rule 6.5 (b) of 1958, which allows a plaintiff to set forth claims of his right in the

alternative, and even hypothetically; and allows making claims "inconsistent" (incompatible) among themselves.

In *Colón* v. *San Patricio Corporation*, 81 P.R.R. 236 (1959), we reversed the judgment which dismissed the action on the ground that the complaint did not state a valid claim (p. 259), and we said:

"With words which, because of their constant use have already become a theme song, we repeat that 'a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim,' and that 'in weighing the validity of a motion to dismiss [a complaint] for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. Its duty, rather, is to consider whether in the light most favorable to the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim.' [citations]."

We have followed this doctrine without altering it, even in the case of *Figueroa* v. *Miranda & Eguía, Inc.*, 83 P.R.R. 533 (1961), where we ratified and used it as a measure (p. 537) in affirming the judgment which had dismissed the complaint for damages for breach of contract, for lack of facts. In *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540 (1959), we said, at p. 546 that in the modern civil procedure it is accepted that the pleadings have only one mission: to show in a *general way* which are the claims and defenses of the parties.

—0—0—0—

■■■ The concept of fault of § 1802 of the Civil Code— 1930 ed.—is infinitely embracing, as ample and embracing as human conduct is. J. Casares, in his *Diccionario Ideológico*, 2d ed. 1963, defines guilt as "fault more or less serious, committed knowingly and willfully." And "fault" as "defect in acting." Cabanellas states that "guilt" in its ample sense

means any fault, willful or not, of a person which produces a wrong or damage, in which case *guilt* is equivalent to *cause*. And differentiates between "fraudulent" guilt and "negligent" guilt. I *Diccionario de Derecho Usual*, 5th ed. 1963.

Talking about fault as the source of obligation, Federico Puig Peña said in his article *Culpa Civil*, VI *Nueva Enciclopedia Jurídica* 108 (1954), that when a person causes damage with his conduct to the person or properties of a third party without it being possible to relate that damage to a previous tie that joins them, the damage should be indemnified, and that this source of obligations of great scope in Modern Law has always been recognized, "although not always with the *ampleness of view with which it is sketched today*," and that the idea of indemnification of the damage appears already in the most ancient Laws, particularly in the Roman Law. But he observes that notwithstanding, the idea of indemnifying the damage in the ancient Law, there did not exist in them a general provision of absolute and universal reach for the indemnification of illegal damage caused, but special situations, and on the other hand, in the present Law *"there exists the general principle* set forth in § 1089, [§ 1042 ours, 1930 ed.]** and more concretely in § 1902 of the Civil Code [§ 1802 ours] by virtue that 'a person who by an act or omission causes damage to another through fault or negligence, shall be obliged to repair the damage so done.' "[1]

---

** Section 1042, 1930 ed.:

"*Obligations* are created by law, by contracts, by quasi contracts, and by *illicit* acts and omissions *or by those in which any kind of fault* or negligence *occurs*."

[1] In a similar manner, the Saxon concept of civil fault is equally embracing. Black's Law Dictionary, 4th ed. 1951, defines "fault" among other meanings: "An error or defect of judgment *or of conduct;* any deviation from prudence, duty or *rectitude,* any shortcoming or neglect of care or performance resulting from inattention, incapacity, *or perversity;* a wrong tendency *course* or *act; bad faith* or mismanagement; neglect of duty."

In the so much cited case of *Hernández* v. *Fournier*, 80 P.R.R. 94 (1957), we adhere to that universal concept of fault. Referring to § 1802 we stated at p. 97:

"According to the section in question, which establishes one of the fundamental principles of our jurisprudence—that of the Aquilian liability for personal acts—*all damage,* whether material or moral, gives rise to reparation if three requirements or elements are met: *first,* proof of the reality of the damage suffered; *second,* a causal relation between the damage and the action or omission of another person; and *third,* said act or omission is negligent or *wrongful.* [citations] That precept '. . . does not admit a limitation or exception of any kind; and consequently, the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong, that the victim be delivered from the effects of the damage suffered.' Borrell, *op. cit.,* 169. Thus, *the manner how damage is caused is immaterial.*" (Italics, in part, ours.)

In *Ramos* v. *Carlo*, 85 P.R.R. 337 (1962), we cited—p. 343—Barassi's statement, quoted by Santamaría, to the effect that the necessity of an orderly social living imposes a general duty of correctness and prudence toward the other citizens, and the act is unlawful in the extracontractual sense when it violates "the general duties of social correctness *or of proper behavior,* which duties are not written in the codes but which represent *the presupposed minimum inference* of the order of social life."

In the same sense we cited from Castán—85 P.R.R. 350:

"The wrongdoer *is always liable for the damage,* whether he has caused it deceitfully or through *mere negligence* and *regardless of its degree,* for even the slightest fault is taken into account because this type of fault affects the relations of social interest rather than the private interest."

There is a social duty that reaches us from the most ancient Laws which imposes abstaining from causing damage or prejudicing a fellow man, the *"alterum non laedere"* of the Roman Law that as Black says, *op. cit.,* next to the *"honeste*

*vivere"* were considered by Justinian as fundamental principles upon which all the rules of law are based.

Thus, in that line of thought, Puig Peña observes *op. cit.,* that every act or omission which causes damage to another is unlawful, because it is contrary to law, and that it will only stop being thus when a cause of exclusion of *unlawfulness* concurs in favor of the agent. See also his IV-II, *Derecho Civil* 571.

■■ If the violations to that duty and social obligation imposed by the orderly social living of not causing damage or prejudicing another would not find legal remedy, society would irremediably fall in the unlawful order of taking justice in its own hand in retaliation. Hence the great importance for social order as indicated by the writers and recognized by us in *Fournier, supra,* of an ample and embracing general provision in Modern Law as is § 1802 of the Civil Code, which imposes upon the person who violates that social duty through his *fault* or negligence, the obligation to repair the damage through legal measures of social peace. The concept of fault includes every kind of human trespass in the legal as well as in the moral order, and as Puig Peña says, it entails the presumption of illegality and unlawfulness—which is contrary to Law—until elements of exclusion of such illegality and unlawfulness are shown.

Every obligation consists in *giving,* doing or not doing something, our Civil Code provides in its § 1041, 1930 ed. And as it says in § 1042 which follows, obligations are created by law . . . and by *illicit acts* and *omissions* or by those in which any kind of *fault* or negligence occurs.

The allegations of the complaint having been examined, we cannot agree with the trial court that in any state of facts which could be proven, plaintiffs and appellants could not be entitled to recover for a tortious act under § 1802 of the Civil Code.

But going back to the beginning, the actual Rule 10.2(5) does not restrain plaintiffs so as to be granted a relief under § 1802. They are entitled to be granted a relief, whichever it may be pursuant to an established state of facts.

In this sense, the allegations give ground, pursuant to the evidence heard, for the court to grant, under said allegations, reliefs in addition to, or not limited to a compensation for damages under the said section. In view of the fact that we remand the case, we deem it proper to abstain from indicating specifically now which could said other reliefs be, so as not to intervene in advance in the orientation or disposition of the litigation.

After the judgment appealed from was rendered, plaintiffs requested leave to introduce an amended complaint, where, without departing from the original allegations, others more specific are made about the conduct charged against defendants-appellees. The admission of the amended complaint was not considered, in view of the fact that the instant appeal was already under our consideration.

Judgment will be rendered reversing the one rendered by the trial court on motion to dismiss, and the record will be remanded to continue the litigation until its final determination on the merits, and for any other further proceeding not inconsistent with this opinion.

Mr. Chief Justice Negrón Fernández did not participate herein.